STATE of Wisconsin, Plaintiff-Respondent,†

v.

Joseph Darryl WILLS, Defendant-Appellant.

Court of Appeals

*No. 92–3243–CR. Submitted on briefs July 27, 1993.—Decided September 15, 1994.*

(Also reported in 523 N.W.2d 569.)

†Petition to review granted.

GARTZKE, P.J., concurs.

For the defendant-appellant the cause was submitted on the briefs of *Bill Ginsberg* of *Mandell & Ginsberg* of Madison.

For the plaintiff-respondent the cause was submitted on the briefs of *James E. Doyle*, attorney general, and *Sally L. Wellman*, assistant attorney general, of Madison.

Before Gartzke, P.J., Dykman and Sundby, JJ.

SUNDBY, J. Defendant-Appellant, Joseph D. Wills, appeals from an order denying his postconviction motion for resentencing or for modification of his sentence. Wills pled no contest to a charge of first-degree intentional homicide, with an enhancement of five years consecutive to his sentence on the principal charge. Pursuant to a plea agreement, the trial court dismissed a hate-crime enhancer and a charge of armed robbery.

Wills pled to these charges pursuant to the State's agreement to recommend that his eligibility for parole be determined by the parole commission under § 304.06(1), STATS.,[1] and not by the trial court under

---

[1] Section 304.06(1)(b), STATS., provides in part:

§ 973.014(2), Stats., 1991-92.[2] However, the trial court set Wills' parole eligibility date at September 8, 2013.

Wills claims that the prosecutor violated the State's plea agreement and that the case should be remanded to the trial court with instructions that the court allow the parole commission to determine parole eligibility, or in the alternative, for resentencing. We agree that the prosecutor did not support the plea agreement at sentencing and, in fact, made arguments which encouraged the trial court to set Wills' parole eligibility date rather than leave that discretion to the parole commission. We, therefore, reverse the order denying Wills' motion for postconviction relief. Consistent with *State v. Poole*, 131 Wis. 2d 359, 365, 389 N.W.2d 40, 43 (Ct. App. 1986), we remand this cause to the trial court for resentencing.

That the prosecutor attempted to undercut the State's plea agreement is apparent when the prosecu-

---

Except as provided in sub. (1m) or s. 161.49 (2), 302.045 (3) or 973.032 (5), the parole commission may parole an inmate of the Wisconsin state prisons or any felon or any person serving at least one year or more in the Milwaukee county house of correction or a county reforestation camp organized under s. 303.07, when he or she has served 25% of the sentence imposed for the offense, or 6 months, whichever is greater. . . .

The exceptions do not apply to Wills.

[2] Section 973.014, Stats., 1991-92, provides:

When a court sentences a person to life imprisonment for a crime committed on or after July 1, 1988, the court shall make a parole eligibility determination regarding the person and choose one of the following options:

 (1) The person is eligible for parole under s. 304.06(1).

 (2) The person is eligible for parole on a date set by the court. Under this subsection, the court may set any later date than that provided in s. 304.06(1), but may not set a date that occurs before the earliest possible parole eligibility date as calculated under s. 304.06(1).

tor's statement of the plea agreement at the time of the plea hearing, April 3, 1991, is contrasted with the prosecutor's subsequent communication to the trial court relative to the exercise of the trial court's discretion under § 973.014, STATS., 1991-92.

At the plea hearing, the prosecutor set forth the plea agreement as follows:

> [PROSECUTOR]: . . . .
>
> . . . .
>
> I would like to make a short statement, if the Court doesn't mind, about the plea agreement.
>
> THE COURT: I think it would be very appropriate.
>
> [PROSECUTOR]: The State was confronted with the defendant's willingness to plead to first-degree murder last week. I met with the victim's family, with Mark Starke[y]'s (phonetics) family on Friday. They are not opposed to this agreement and, in fact, are supportive of it.
>
> I spent the weekend thinking about the potential of the defendant pleading to first-degree intentional homicide with the other agreements.
>
> After further negotiations on Monday morning, the defendant agreed to plead to the first-degree, with the weapons enhancer, and the agreed sentence.
>
> I want the Court to know, that my decision to agree to this plea does not in any way depreciate the value of the hate crime law. It is a law that I am strongly supportive of. But sometimes I think there are overriding considerations. Those in this case are the risks of trial, which are always present whenever one tries a first-degree murder case.
>
> I think the Court can well remember the *Percey* (phonetics) case, which was a cold-blooded killing of two individuals who were sleeping, and the jury

came back with less than a first-degree murder verdict.

There's also the expense of the trial. Not so much in terms of dollars, but in terms of the human expense to a family of a victim and to others involved.

*Quite frankly, I don't know how any prosecutor could turn down a plea to first-degree intentional homicide.* And that's sort of where it came out for me.

Because it carries with it a life sentence, there is no way to better protect this community and other communities from this defendant than to accept this plea.

The dismissal of the hate crime enhancer, which barely affects the penalty, would, at best, increase the parole eligibility by one year, does not in any way change the motive that the defendant had when he committed this crime. It does not in any way change the facts of this crime. The facts are the facts. Those are the facts upon which the defendant will be sentenced. And those are the facts upon which the parole board will make decisions as to the defendant's eligibility.

And for those reasons, I would strongly recommend this plea to the Court.

(Emphasis added.)

However, in response to the trial court's request to the prosecutor and defense counsel for argument focused on the court's exercise of its discretion under § 973.014, STATS., 1991-92, the prosecutor addressed a letter to the trial judge in which she made very clear that she believed Wills' crimes justified the trial court's exercise of its discretion to set Wills' parole eligibility date. She expressed her opinion that "this case is extremely aggravated." She also stated that "the defendant's attitude is damning." She emphasized Wills'

expressed hatred of "queers." She argued that Wills' version of what happened was "not entirely credible." She disparaged Wills' psychological evaluation: "It is easy to forget the facts of this case and get taken in by 'psycho babble.'" She emphasized Starkey's value to the community and the loss to his family and friends.

The prosecutor described Wills' murder of Starkey as "calculated and cold-blooded." She suggested that the State's psychological evaluation of Wills was more reliable than the evaluation done by Wills' medical expert. The prosecutor characterized Wills' statements to the police as "derogatory and remorseless." Over and over again she emphasized Wills' expressed hatred of "queers," although at the plea hearing she justified dropping the hate-crime enhancer because of "overriding considerations" and the fact that the enhancer barely affected the penalty. She asked, rhetorically: "Does [Wills' claimed childhood sexual abuse, remorse and tolerance] excuse in any way the defendant's taking of a life? The life of a wonderful, caring, unarmed, naive, defenseless man? Absolutely not."

The prosecutor made a very persuasive case for denying Wills any realistic chance for parole. In fact, she implied that it was unlikely that the parole commission would ever grant him parole. We would find no objection to the prosecutor's arguments were it not for the fact that she had agreed she would argue for the plea bargain which would allow the parole commission to determine Wills' eligibility for parole.

Whether the prosecutor violated the spirit of the plea agreement is a question of law which we decide *de novo*. *State v. Ferguson*, 166 Wis. 2d 317, 320-21, 479 N.W.2d 241, 243 (Ct. App. 1991).

"The disposition of criminal charges by agreement between the prosecutor and the accused . . . is an essential component of the administration of justice. Properly administered, it is to be encouraged." *Santobello v. New York*, 404 U.S. 257, 260 (1971). Four factors give plea bargaining its "highly desirable" status. *Id.* at 261. Plea agreements lead to fast and final dispositions, reduce the negative impact of pretrial detention on defendants, eliminate pretrial release of dangerous defendants, and enhance "rehabilitative prospects" by shortening the delay between crime and punishment. *Id.*

Plea bargaining "has become the ordinary dispositive procedure of American law." John H. Langbein, *Torcher and Plea Bargaining*, 46 U. CHI. L. REV. 3, 9 (1978), *quoted in* Daniel Frome Kaplan, Comment, *Where Promises End: Prosecutorial Adherence to Sentence Recommendation Commitments in Plea Bargains*, 52 U. CHI. L. REV. 751, 753 n.8 (1985). "Up to [ninety percent] of all felony convictions in the state courts result from negotiated guilty pleas." Kaplan, 52 U. CHI. L. REV. at 753 (citing Cramer et al., *The Judicial Role in Plea-Bargaining, in* PLEA-BARGAINING 139 (W. McDonald & J. Cramer eds. 1980)).

The Supreme Court made clear in *Mabry v. Johnson*, 467 U.S. 504 (1984), that a criminal defendant has a constitutional right to the enforcement of a plea bargain. The court said: "A plea bargain standing alone is without constitutional significance; in itself it is a mere executory agreement which, until embodied in the judgment of a court, does not deprive an accused of liberty or any other constitutionally protected interest. *It is the ensuing . . . plea that implicates the Constitu-*

tion." *Id.* at 507-08 (emphasis added) (footnote omitted). Kaplan suggests that *Mabry* "makes clear that due process concerns are implicated in the process of enforcing a plea agreement." 52 U. CHI. L. REV. at 755. "Although a defendant has no right to call upon the prosecution to perform while the agreement is wholly executory, once the defendant has given up his bargaining chip by pleading guilty, due process requires that the defendant's expectations be fulfilled." *Id.*

An analysis of a plea agreement under standard contract law leads to the same result as does an analysis under the due process clause. Contract law reads into commercial contracts a duty to deal in good faith and a duty to use best efforts. *Id.* at 766. The courts in *Bergman v. Lefkowitz*, 569 F.2d 705 (2d. Cir. 1977), and *United States v. Mooney*, 654 F.2d 482 (7th Cir. 1981), "imposed a duty of good faith by requiring the prosecutor not to 'cast doubt' on his first sentence recommendation." Kaplan, 52 U. CHI. L. REV. at 766 & nn.73-74. In another plea bargain case, the court required the prosecutor to use his "best efforts" to support a plea agreement; the prosecutor's "half-hearted delivery of a statement of agreed recommendation was not considered fulfillment of his promise." *Id.* at 766 & n.76 (citing *United States v. Brown*, 500 F.2d 375, 377 (4th Cir. 1974)).

A plea agreement induces a defendant to waive his or her fundamental right to a trial. "Government sentence recommendation commitments fundamentally influence the defendant's calculus by altering the expected outcome of a sentencing proceeding." *Id.* at 769. In this case, the prosecutor correctly observed,

537

"[q]uite frankly, I don't know how any prosecutor could turn down a plea to first-degree intentional homicide." Having obtained that plea, the prosecutor was required to argue to the trial court that the agreement was consistent with the appropriate sentencing criteria. If the prosecutor could not support the agreement, she should not have committed the State to it. We therefore conclude that Wills is entitled to be resentenced.

*By the Court.*—Order reversed and cause remanded with directions.

GARTZKE, P.J. (*concurring*). The prosecutor and the defense attorney asked the trial court to sentence Wills to life plus five years consecutive, the parole board to determine his parole eligibility. The prosecutor stated that she "would strongly recommend this plea to the court." The court directed that a presentence investigation report be furnished to it.

Later the court wrote to the prosecution and defense, noting its obligation under § 973.014, STATS., to either let the parole commission set the parole eligibility date under § 304.06(1), STATS., or to set the parole eligibility date itself for any date after the earliest possible date calculated under § 304.06(1). The court sought assistance on setting a parole date, should it decide not to leave the matter to the parole board, and later stated that seeking such assistance was its intent when writing the letter.

The prosecution could not comply with both the trial court's request and the plea bargain. The prosecution was bound by the terms of the plea bargain to request that parole eligibility be set by the parole board. To assist the court in its setting Wills's parole eligibility date was inconsistent with the State's bargain because the date set by the court would

necessarily be later than the earliest date the parole board could set.

Because the court's request for assistance was inconsistent with the plea bargain, the prosecutor should have declined to make any response, other than point out the inconsistency and reiterate its recommendation that the parole board determine Wills's parole eligibility.