STATE of Wisconsin, Plaintiff-Respondent,

v.

Antonio A. SCOTT, Defendant-Appellant.

Court of Appeals

*No. 98–2109–CR. Submitted on briefs May 11, 1999.—Decided September 29, 1999.*

(Also reported in 602 N.W.2d 296.)

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Jennifer L. Weston* of *Weston Law Office* of Whitewater.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *James E. Doyle*, attorney general and *Pamela Magee*, assistant attorney general.

Before Nettesheim, Snyder and Langhoff,[1] JJ.

LANGHOFF, J. Antonio A. Scott appeals from judgments and an order denying his motion for post-conviction relief. Scott reached a plea agreement with the State under which he pled no contest to and was found guilty of the following offenses: fleeing an officer, resisting an officer, and disorderly conduct contrary to §§ 346.04(3), 946.41(1) and 947.01, STATS. The plea agreement restricted the State's sentencing recommendation. At sentencing, the State was permitted to withdraw from the agreement. Later, the State advanced a modified sentencing proposal which afforded the State the ability to recommend a significantly longer sentence. Scott acceded to the new proposal.

Scott seeks resentencing on the grounds that his trial counsel provided ineffective assistance by failing to advise him that he had the right to seek enforcement of the original plea agreement under which he entered his no contest pleas. Alternatively, Scott asks this court to exercise its authority of discretionary reversal and

---

[1] Circuit Judge Gary Langhoff is sitting by special assignment pursuant to the Judicial Exchange Program.

order resentencing. Because we conclude that the trial court erred by failing to find trial counsel's performance ineffective when counsel neglected to advise Scott that he could pursue enforcement of the original agreement in which he entered no contest pleas, we reverse and remand to the trial court for resentencing.

## I. *PROCEDURAL BACKGROUND*

On February 24, 1997, a criminal complaint was filed in Kenosha County Circuit Court charging Scott with fleeing an officer, resisting an officer and possession of marijuana. At the time of the commission of the offenses, Scott's status was that of a probationer *and* parolee. He was charged as a repeat offender in all three counts.

After Scott's initial appearance, but before the preliminary hearing, his counsel negotiated the following plea agreement with the prosecutor. In exchange for waiver of Scott's right to a preliminary examination and pleas of no contest to fleeing an officer, a heretofore uncharged battery offense, and an obstructing charge all with habitual criminality penalty enhancers, the State would dismiss the possession of marijuana charge, utilizing it along with a previously uncharged ninth offense, operating after revocation (OAR) charge for read-in purposes at sentencing. Moreover, the State agreed not to pursue the uncharged offenses of disorderly conduct and second-degree recklessly endangering safety.

In accordance with the plea agreement, the State would confine its sentencing recommendation to one of concurrent prison time in the event Scott were returned to prison as a result of parole revocation. However, under the agreement, the State would retain a "free hand" as to the length of the sentence it would

recommend in the case at bar. The plea agreement did not encompass Scott's probation revocation cases.

Scott accepted the State's offer, waived his right to a preliminary hearing and was bound over for trial.

Thereafter, a different prosecutor was assigned to the case. Scott's counsel renegotiated the plea agreement with the successor counsel. On April 3, 1997, the State filed an amended criminal complaint and information charging Scott with the following offenses: battery, disorderly conduct, fleeing an officer, second-degree recklessly endangering safety, resisting an officer, possession of marijuana and ninth offense OAR contrary to §§ 940.19(1), 947.01, 346.04(3), 346.17(3), 941.30(2), 946.41(1), 961.41(3g), 961.48, 343.08, 343.44(1), STATS. Each charge carried a penalty enhancer for habitual criminality. Pursuant to the renegotiated agreement, Scott was required to enter no contest pleas to the charges of disorderly conduct, fleeing an officer and resisting an officer with the penalty enhancers; in turn, the State was obligated to dismiss the other counts, utilizing the possession of marijuana and OAR charges as read-in offenses for sentencing purposes.

Furthermore, the State agreed to recommend that all sentences arising out of all of Scott's Kenosha county cases would run concurrent to each other. Hence, the agreement embraced not only the sentence recommendation for the instant case but also sentence recommendations for Scott's parole revocation and probation revocation cases.[2] Scott accepted the

---

[2] The new agreement differed substantially from the initial agreement because Scott's probation and parole revocation cases were now part of the package. The maximum possible sentence *recommendation* was reduced from forty to fourteen years.

renegotiated agreement and entered no contest pleas to the three charges with enhanced penalties. Sentencing was scheduled for June 6, 1997.

At the sentencing hearing, the first prosecutor reappeared and informed the court that the State was withdrawing from the agreement post plea because her successor, who renegotiated the agreement had no "approval" from the district attorney to make the offer of recommending prison time concurrent with Scott's probation and parole revocation cases. Thereafter, the prosecutor proffered a post-plea proposal wherein the convictions, dismissals and read-ins would remain the same, but the State would recommend consecutive prison time to any sentence imposed on the pending probation and parole revocation cases. Defense counsel asked the court for time to consider this turn of events. The sentencing hearing was rescheduled for June 20, 1997.

Scott's case proceeded to sentencing. His lawyer neither sought withdrawal of the pleas nor requested specific performance of the agreement under which Scott's pleas were entered. In essence, Scott acceded to the post-plea proposal propounded by the State.

At sentencing, the State recommended an eight-year prison sentence to run consecutively to a probation revocation case in which Scott received a ten-year sentence. Also, the State recommended consecutive probation on the remaining two counts.

Scott was sentenced to an eight-year prison term on the fleeing an officer charge (with penalty enhancer) to run consecutively to the ten-year sentence imposed on a probation revocation case. On the disorderly conduct charge (with enhanced penalty) and on the resisting charge (with enhanced penalty), Scott received imposed and stayed three-year prison

sentences to run consecutively to each other and any other sentence he might be serving at the time of revocation. The three-year sentences on each charge were stayed in favor of three years' probation to run concurrently with each other.

Scott filed a motion for postconviction relief seeking resentencing. The trial court denied the motion; Scott appeals.

## II. ENFORCEMENT OF PLEA AGREEMENT

### A. Due Process Analysis

The United States Supreme Court has recognized that once a plea has been entered in accordance with a negotiated plea agreement, a criminal defendant has a constitutional right to enforcement of the agreement. *See Mabry v. Johnson,* 467 U.S. 504, 507–08 (1984); *accord State v. Smith,* 207 Wis. 2d 258, 271, 558 N.W.2d 379, 385 (1997). In this vein, the prosecutor is constrained to abide by the terms of a plea agreement when a criminal defendant pleads guilty or no contest pursuant to an agreement. *See Santobello v. New York,* 404 U.S. 257, 262 (1971).[3]

■■■■

Principles of substantive due process are implicated by and inherent in the process of enforcing a plea agreement. *See State v. Wills,* 187 Wis. 2d 529, 537, 523 N.W.2d 569, 572 (Ct. App. 1994), *aff'd,* 193 Wis. 2d 273, 533 N.W.2d 165 (1995); *see also State v. Rivest,* 106 Wis. 2d 406, 413, 316 N.W.2d 395, 399 (1982).

---

[3] The United States Supreme Court in *Santobello v. New York,* 404 U.S. 257, 260 (1971), noted, "The disposition of criminal charges by agreement between the prosecutor and the accused . . . is an essential component of the administration of justice. Properly administered, it is to be encouraged."

"Although a defendant has no right to call upon the prosecution to perform while the [plea] agreement is wholly executory, once the defendant has given up his bargaining chip by pleading guilty, due process requires that the defendant's expectations be fulfilled." *Wills,* 187 Wis. 2d at 537, 523 N.W.2d at 572 (quoted source omitted). Substantive due process is equated with the concept of fundamental fairness. *See Aldens, Inc. v. LaFollette,* 552 F.2d 745, 750 (7th Cir. 1977). Inevitably, substantive due process impels enforcement of plea agreements where the defendant has entered a plea of guilty or no contest.

Clearly, detrimental reliance need not be demonstrated where a plea agreement has been reached *and* a guilty or no contest plea has been entered.[4] After a prosecutor induces a plea pursuant to a plea agreement, the prosecutor is required to carry out his or her part of the bargain. The United States Supreme Court adroitly commented in *Mabry* that:

> A plea bargain standing alone is without constitutional significance; in itself it is a mere executory agreement which, until embodied in the judgment of a court, does not deprive an accused of liberty or any other constitutionally protected interest. *It is the ensuing . . . plea that implicates the Constitution.*

---

[4] That is not to say detrimental reliance is not attendant to a plea agreement where guilty or no contest pleas are entered by a criminal defendant. To the contrary, detrimental reliance is the concomitant principle underpinning a criminal defendant's prerogative to enforce a plea agreement. It is detrimental reliance that requires the government to be held to its promises in order to promote fairness to the defendant and further the interests of justice. *See generally Santobello,* 404 U.S. at 262; *cf. Stokes v. Armontrout,* 851 F.2d 1085, 1090–91 (8th Cir. 1988).

652

*Mabry,* 467 U.S. at 507–08 (quoted in *Wills,* 187 Wis. 2d at 536–37, 523 N.W.2d at 572 (emphasis provided in *Wills*)).

In the case *sub judice* Scott initially agreed to (1) waive his right to a preliminary examination,[5] (2) plead no contest to a charge of fleeing an officer and to two misdemeanor offenses all with enhanced penalties, and (3) acknowledge commission of two separate misdemeanor offenses to be dismissed and read in at sentencing. For its part, the State agreed not to pursue several uncharged crimes, dismiss others and limit its sentencing recommendation to time concurrent to Scott's parole revocation case. The State was free to argue the length of the concurrent sentence. Scott accepted the State's offer and was bound over for arraignment.

To this point the plea agreement was wholly executory. Scott had not entered guilty or no contest pleas to any of the charges.[6] Each party had the opportunity to withdraw from or modify the plea agreement. In fact, the plea agreement was renegotiated.

Under the renegotiated agreement, Scott again was required to plead no contest or guilty to the charge of fleeing an officer and to two misdemeanor offenses

---

[5] We recognize that relinquishment of one's right to a preliminary hearing is waiver of a statutory right, not a constitutional right.

[6] Where a plea agreement has been reached and the criminal defendant has not entered pleas of guilty or no contest, the defendant may seek enforcement of the agreement only upon affirmatively demonstrating detrimental reliance. Absent detrimental reliance on the bargain, the defendant has an adequate remedy by being restored to the position occupied prior to the agreement. *See State v. Beckes,* 100 Wis. 2d 1, 6–8, 300 N.W.2d 871, 874–75 (Ct. App. 1980).

all of which carried penalty enhancers. In exchange for Scott's pleas, the State agreed to dismiss or not charge certain offenses. However, the State further promised to recommend that any sentence imposed on the three charges would run concurrent to Scott's parole *and* probation revocation cases. Scott accepted the new offer, entered pleas of no contest to the charges, and was found guilty of the three offenses with enhanced penalties.

Scott and the State reached a plea agreement. Scott entered no contest pleas to the charges. Principles of substantive due process attend the agreement. Accordingly, the prosecutor is obligated to comply with the terms of the plea agreement. Detrimental reliance is not a prerequisite to enforce a plea agreement where guilty or no contest pleas have been entered. In these circumstances, the remedy of specific performance is rooted in constitutional considerations, not detrimental reliance.[7]

## B. *Contract Analysis*

Plea agreements are matters of criminal jurisprudence, but because a plea bargain is analogous to a contract, we also look to contract-law principles to

---

[7] In *Santobello,* Justice William O. Douglas observed: "[A] guilty plea is a serious and sobering occasion inasmuch as it constitutes a waiver of fundamental rights to a jury trial, to confront one's accusers, to present witnesses in one's defense, to remain silent, and to be convicted by proof beyond a reasonable doubt . . . ." *Santobello*, 404 U.S. at 264 (Douglas, J., concurring) (citations omitted). Thus, "when a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled." *Id.* at 262.

determine a criminal defendant's rights thereunder. *See State v. Windom*, 169 Wis. 2d 341, 348, 485 N.W.2d 832, 835 (Ct. App. 1992). The court of appeals in *Wills*, 187 Wis. 2d at 537, 523 N.W.2d at 572, noted that "[a]n analysis of a plea agreement under standard contract law leads to the same result as does an analysis under the due process clause."

Every contract entails an implied obligation of good faith and fair dealing. *See Chayka v. Santini*, 47 Wis. 2d 102, 107 n.7, 176 N.W.2d 561, 564 (1970). The law of contracts imposes a duty to deal in good faith and a duty to use best efforts in a commercial contract setting. *See Wills*, 187 Wis. 2d at 537, 523 N.W.2d at 572. It is a fundamental precept of contract law that when performance of a duty under a contract is due, any nonperformance is a breach, and an aggrieved party may sue for specific performance. *See* RESTATEMENT (SECOND) OF CONTRACTS § 235(2) (1981); *see also Edlin v. Soderstrom*, 83 Wis. 2d 58, 70, 264 N.W.2d 275, 281 (1978).

We are mindful, however, that the analogy of plea agreements to private contracts is not precise. The constitutional concerns undergirding a defendant's "contract rights" in a plea agreement demand broader and more vigorous protection than those accorded private contractual commitments.[8]

---

[8] *See United States v. Burns*, 990 F.2d 1426, 1433 (4th Cir. 1993). Federal courts have recognized that a criminal defendant's rights are grounded in more than contract; thus, contract principles, while useful, do not completely define the obligations of the parties. *See United States v. Ready*, 82 F.3d 551, 558–59 (2d Cir. 1996); *United States v. Heatley*, 39 F. Supp.2d 287, 300 n.7 (S.D.N.Y. 1998). A myriad of collateral considerations, such as expectations of fundamental fairness by the defendant and

In the instant case, the State was obliged to act in good faith and adhere to the bargain it had struck with Scott. After the contract had been negotiated and Scott's no contest pleas entered, neither party had the right to renege on the agreement. At that point Scott had the prerogative, in the event of breach, to seek enforcement of the agreement. Detrimental reliance was neither a prerequisite nor a precondition to pursue such relief.

## III. INEFFECTIVE ASSISTANCE OF COUNSEL

■ A criminal defendant's right to counsel is guaranteed by the Sixth Amendment to the United States Constitution and by Article I, § 7 of the Wisconsin Constitution. The right to counsel was designed to protect the fundamental due process rights of criminal defendants. *See Strickland v. Washington,* 466 U.S. 668, 684–85 (1984). The *Strickland* Court articulated the now familiar two-pronged test for determining whether a defense counsel's actions constitute ineffective assistance in the constitutional sense: (1) whether the attorney's performance was deficient, and (2) whether the attorney's allegedly deficient performance prejudiced the defendant. *See id.* at 687; *accord State v. Pitsch,* 124 Wis. 2d 628, 633, 369 N.W.2d 711, 714 (1985).

■ A trial court's ineffective assistance of counsel analysis involves mixed questions of law and fact. *See State v. Haskins,* 139 Wis. 2d 257, 262, 407 N.W.2d 309,

the efficient administration of justice, are implicated in plea agreements. In light of such implications, application of the rules of commercial contract law may require "tempering" the rules. *See Ready,* 82 F.3d at 558.

311 (Ct. App. 1987). The trial court's factual findings will not be reversed unless they are clearly erroneous; however, issues bearing on whether trial counsel's conduct was deficient and prejudicial are questions of law that this court reviews de novo. *See State v. Moats,* 156 Wis. 2d 74, 101, 457 N.W.2d 299, 311 (1990).

## A. *Deficient Performance*

The failure of Scott's trial counsel to request specific performance of the plea agreement serves as the basis for his ineffective assistance of counsel claim.

In *Strickland,* the Supreme Court expressly refused to establish specific bench marks by which counsel's performance could be measured. Rather, the Court directed that "the defendant must show that counsel's representation fell below an objective standard of reasonableness." *Strickland,* 406 U.S. at 688. We are, however, given definite direction in reviewing counsel's performance under the first prong of the two-pronged test:

> [A] court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct. A convicted defendant making a claim of ineffective assistance must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment. The court must then determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance. In making that determination, the court should keep in mind that counsel's function, as elaborated in prevailing professional norms, is to make the adversarial testing process work in the particu-

lar case. At the same time, the court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.

*Id.* at 690.

To establish deficient performance, the defendant must show that counsel "made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *State v. Johnson,* 153 Wis. 2d 121, 127, 449 N.W.2d 845, 847 (1990) (quoting *Strickland,* 466 U.S. at 687). Correlatively, judicial scrutiny of an attorney's performance will be highly deferential. *See Pitsch,* 124 Wis. 2d at 637, 369 N.W.2d at 716.

In the wake of Scott's convictions, he filed a motion for postconviction relief predicated on a claim of ineffective assistance of counsel. At the *Machner*[9] hearing, Scott's trial counsel testified that although she spoke with Scott about withdrawing his pleas and returning to his prearraignment status, counsel did not pursue or even consider the option of seeking specific performance to enforce the plea agreement. This was because counsel erroneously believed that Scott had an affirmative duty to demonstrate detrimental reliance on the agreement to which he had entered his no contest pleas. Absent detrimental reliance, it was trial counsel's belief that specific performance of the plea agreement was unavailable.

Scott fully complied with his obligations under the plea agreement. However, post plea and immediately prior to sentencing, the trial court permitted the State

[9] *State v. Machner,* 92 Wis. 2d 797, 285 N.W.2d 905 (Ct. App. 1979).

to withdraw from the plea agreement. Later, the State made a new proposal which ratcheted up the stakes. Trial counsel assumed that the only choices available to Scott were withdrawing his pleas or assenting to the State's new proposal. Scott's attorney failed to advise him that he could elect to pursue a third option, namely, specific performance of the April 3, 1997 plea agreement to which he had entered his no contest pleas.

In *Smith*, the court held that "defense counsel's failure to immediately object to the prosecutor's sentence recommendation, a recommendation that clearly breached Smith's plea agreement, was not reasonable conduct within professional norms and constitutes deficient performance." *Smith*, 207 Wis. 2d at 274–75, 558 N.W.2d at 387. Here, Scott's claim is based on counsel's failure to endeavor to hold the State to the plea agreement. Not only did trial counsel fail to obtain such relief, counsel never informed Scott that this avenue was open to him. We conclude that trial counsel's neglect in this regard is tantamount to and constitutes deficient performance.

### B. Prejudice to Defendant

Under the second prong of the *Strickland* test, the inquiry is whether trial counsel's error was so serious that the defendant was deprived of a fair proceeding whose result is reliable. *See Strickland,* 466 U.S. at 687; *accord Pitsch,* 124 Wis. 2d at 642, 369 N.W.2d at 718. An error is prejudicial if it undermines the confidence in the outcome of the proceeding. *See Haskins,* 139 Wis. 2d at 263, 407 N.W.2d at 312.

In *Strickland,* the Supreme Court asseverated:

The result of a proceeding can be rendered unreliable, and hence the proceeding itself unfair, even if the errors of counsel cannot be shown by a preponderance of the evidence to have determined the outcome.

. . . The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.

*Strickland,* 466 U.S. at 694.

■■■

The *Strickland* test is not an outcome determinative test. *See id.* at 693–94. The salient feature of the prejudice component under *Strickland* is whether counsel's deficient performance renders the result of the proceedings unreliable, and, as a result, the fairness of the proceeding itself is called into question. *See id.* at 694. Hence, the ultimate focus of our inquiry is on the fundamental fairness of the proceeding whose result is being challenged. *See Haskins,* 139 Wis. 2d at 263–64, 407 N.W.2d at 312.

In *Smith,* our supreme court also addressed the issue of prejudice to a criminal defendant brought in connection with a claim of ineffective assistance of counsel. There, the State and the defendant negotiated a plea agreement. Essentially, the defendant agreed to plead no contest to one count of burglary and no contest to four misdemeanor offenses. Under the terms of the agreement the prosecutor agreed to refrain from making any sentencing recommendation. At the sentencing hearing, however, the prosecutor recommended a fifty-eight-month prison sentence. *See Smith,* 207 Wis. 2d at 272, 558 N.W.2d at 386.

The State conceded that the defense attorney's failure to object to the prosecutor's sentencing recommendation constituted deficient performance of counsel. The pivotal question addressed by the supreme court in *Smith* was whether the defendant was prejudiced by his trial counsel's deficient performance. The court recognized the difficulty in measuring the degree to which the defendant was prejudiced. Nevertheless, the supreme court concluded in *Smith* that the prosecutor's conduct constituted a substantial and material breach of the plea agreement resulting in prejudice to the defendant. The court's conclusion was "premised on the rule of *Santobello*, that when a negotiated plea rests in any significant degree on a promise or agreement of the prosecutor, such promise must be fulfilled." *Smith,* 207 Wis. 2d at 281, 558 N.W.2d at 389.

Again, turning to the case at bar, we primarily focus on whether the proceeding was fundamentally fair. In this regard, not only did Scott's counsel not seek enforcement of the plea agreement under *Santobello,* but counsel never even apprised Scott of the option. Consequently, Scott was unaware of his substantive right to enforce the plea agreement. Because defense counsel incorrectly assumed that Scott was required to show detrimental reliance as a prerequisite to enforcement of the plea agreement, he had little choice but to accede to the State's post-plea changes to the agreement.

The State engaged in regressive bargaining after an enforceable agreement had been reached. As a result, several fundamental questions are raised: Absent misconduct by a defendant, is it fair to permit the State to modify a plea agreement post plea? Is it

661

fair for defense counsel to neglect to seek enforcement of a valid plea agreement? Is it fair to deprive the defendant of a substantive due process right?

In its discussion of the prejudice component of ineffective assistance of counsel, the *Smith* court observed that *Santobello* remains consistent with later rulings of the United States Supreme Court in that it recognizes that a criminal defendant has a substantive right to the fulfillment of fundamental terms of a plea agreement. It follows *a fortiori* that a failure to seek enforcement of this constitutional right is unfair and constitutes prejudice to the defendant.

As an explanation for modifying the plea agreement between Scott and the State, the prosecutor told the court that the successor prosecutor who negotiated the agreement did not have the blessing of the district attorney to commit the State to a sentence recommendation of prison time concurrent to Scott's probation and parole revocation cases. Prosecutors are agents of the State, and it is the State rather than the individual prosecutor which is bound by the agreement. Courts should not vacate plea agreements merely because the State, at a later time, concludes the agreement was unwise. *See Rivest*, 106 Wis. 2d at 435, 316 N.W.2d at 409 (Abrahamson, J., dissenting).

On appeal, the State contends that "because Scott could have returned to his prepreliminary hearing status without objection at the time the state withdrew from the agreement, he was neither deprived of the benefit for which he bargained nor had he given up his 'bargaining chip.' " The State's argument is predicated on this court's decision in *State v. Paske,* 121 Wis. 2d 471, 360 N.W.2d 695 (Ct. App. 1984).

In *Paske*, the defendant entered into a plea agreement whereby in exchange for pleas of no contest to ten burglary charges, seven felony theft charges and one count of misdemeanor theft, the State agreed to recommend a prison sentence not to exceed eleven years. Paske entered his pleas, was found guilty, and a presentence investigation was ordered. The defendant remained in custody pending sentencing. *See id.* at 472, 360 N.W.2d at 696.

While awaiting sentencing, Paske conspired with other jail inmates to escape. He was charged with this offense and pled guilty to this charge also.

The prosecutor negotiated a new plea agreement which included the escape charge. Under the new agreement, the prosecutor offered to make no sentence recommendation. Paske accepted the State's new offer. He was sentenced to eighteen years in prison. On appeal, Paske sought to enforce the original agreement.

The differences between *Paske* and the present case are palpable, and, consequently, we reject the State's reliance on the *Paske* case. Prior to sentencing, Paske conspired to escape from jail and was found guilty of that offense *after* the original plea agreement had been reached. In light of that development, the State made a new offer which included the escape charge coupled with the obligation to make no sentencing recommendation. This court noted in *Paske* that "[t]he circumstances surrounding this modification of the plea agreement violate no standards of fairness or decency nor any factors bearing upon due process." *Id.* at 475, 360 N.W.2d at 697. The same cannot be said for Scott.

In the instant case, the State reached a plea agreement with Scott. Scott entered no contest pleas

pursuant to the agreement. He relinquished his "bargaining chip." Thereafter, the State reconsidered its sentencing recommendation and unilaterally sought to modify the sentencing recommendation.

Once Scott and the State reached an agreement and the no contest pleas were entered, Scott did nothing to contravene, violate or breach the agreement. Thus, Scott had a constitutional right to seek enforcement of the plea agreement. His trial counsel neither pursued enforcement of this right nor informed Scott of it. Because counsel neglected to inform Scott of his substantive right to due process, we conclude that Scott was deprived of a proceeding that was fundamentally fair. Therefore, the fairness of the process itself is suspect. Scott was prejudiced by his counsel's ineffective assistance.

We recognize that the sentencing court is not bound by the negotiations of the parties. *See Smith*, 207 Wis. 2d at 281, 558 N.W.2d at 389–90. "The sentencing court always has an independent duty to look beyond the recommendations and to consider all relevant sentencing factors." *Id.* Clearly, the trial court judge has the authority to sentence Scott to any appropriate sentence up to the statutory maximum.

Scott also requested that we exercise our discretionary powers of reversal pursuant to §§ 751.06 and 752.35, STATS., and order a new sentencing hearing under the terms of the plea agreement of April 3, 1997. Because we reverse on the claim of ineffective assistance of counsel, we need not address this request.

## IV. CONCLUSION

We conclude that Scott had a substantive due process right to enforce the original plea agreement he had

with the State. Moreover, we conclude that the performance of Scott's trial counsel was deficient because counsel failed to apprise Scott of his right to seek enforcement of the plea agreement. We also hold that trial counsel's failure to inform Scott of this option was prejudicial to him. We grant Scott's request for a new sentencing hearing requiring the State to adhere to the terms of the plea agreement as it existed on April 3, 1997.

*By the Court.*—Judgments and order reversed and cause remanded with directions.

NETTESHEIM, J. (*concurring in part; dissenting in part*). I agree with the majority's holding that trial counsel was ineffective in failing to advise Scott that he could pursue enforcement of the original plea agreement and that Scott was prejudiced by such failure.

However, I disagree with the majority's remand directive that the remedy is "a new sentencing hearing requiring the State to adhere to the terms of the plea agreement as it existed on April 3, 1997." (Majority at 665.) I contend that the proper remand is for Scott to first make application to the trial court for enforcement of the original plea agreement. If that request is granted, then the resentencing proceeding envisioned by the majority would be appropriate.

When a trial or appellate court determines that an attorney has failed to provide effective assistance of trial counsel and that such failure is prejudicial, the proper remedy is to return the case to the posture it was in before counsel performed deficiently. *See State v. Lentowski*, 212 Wis. 2d 849, 857–58, 569 N.W.2d 758, 762 (Ct. App. 1997). Here, when the State withdrew from the April 3, 1997 plea agreement, counsel was

665

ineffective by failing to advise Scott that he could seek enforcement of that agreement. If counsel had performed effectively, he would have advised Scott of this option and Scott could have then brought a motion to enforce the plea agreement. To correct counsel's failing, we should return the case to that posture and allow Scott to make such application to the trial court if he so chooses. Instead, the majority's directive for a new sentencing "leapfrogs" this process.

Under the facts of this case, the trial court should first determine whether enforcement of the plea agreement is proper. While that might seem a foregone conclusion in this case, orderly procedure calls for the trial court to first make this determination before any new sentencing occurs. That is the way the matter would have played out in the trial court if counsel had performed properly. There is no reason to depart from that procedure when an appellate or trial court holds that counsel has not performed properly.

I respectfully dissent from the majority's remand directive.