STATE of Wisconsin, Plaintiff-Respondent,

v.

Nelson Luis FORTES, Defendant-Appellant.

Court of Appeals

*No. 2014AP714–CR. Submitted on briefs January 6, 2015.
—Decided February 24, 2015.*

2015 WI App 25

(Also reported in 862 N.W.2d 154.)

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Trisha Stewart Martin* of *Stewart Law Offices* of Milwaukee.

■■■■■■■■■■■■■

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *J.B. Van Hollen*, attorney general and *Daniel J. O'Brien*, assistant attorney general.

Before Curley, P.J., Kessler, J., and Thomas Cane, Reserve Judge.

¶ 1. KESSLER, J. Nelson Luis Fortes appeals from a judgment of conviction for one count of aggravated battery of an elderly person and one count of burglary to a dwelling, both as a party to a crime, contrary to WIS. STAT. §§ 940.19(6)(a), 943.10(2)(e), and 939.05 (2011–12).[1] He also appeals from orders denying his postconviction motion and supplemental postconviction motion. Fortes argues that he is entitled to plea withdrawal or resentencing because his plea was not knowingly, intelligently, and voluntarily entered and because of the ineffective assistance of trial counsel. We affirm.

## BACKGROUND

¶ 2. Fortes was charged with the aforementioned crimes based on a break-in at an elderly woman's home. According to the criminal complaint, Fortes and another person entered the elderly woman's home through an unlocked window. Fortes covered the woman's head with a coat and hit her in the face, while his female co-actor took jewelry from the woman's bedroom. According to video captured by a neighbor's security system, the two actors ran from the home carrying the woman's property.

---

[1] All references to the Wisconsin Statutes are to the 2013–14 version unless otherwise noted.

¶ 3.   Fortes waived his preliminary hearing and ultimately pled guilty to the crimes. At the guilty plea hearing, neither the State nor trial counsel told the trial court that they had reached a plea agreement, and the written guilty plea questionnaire and waiver of rights form did not indicate that any plea agreement had been made. The trial court did not specifically inquire whether there was a plea agreement, but it asked Fortes a series of questions about the pleas he was entering. The trial court asked Fortes if anybody "made any promises or threats to you to plead," and Fortes replied: "No." The trial court also told Fortes that it was "not bound by any negotiation or plea bargains," and Fortes indicated that he understood.

¶ 4.   At the conclusion of the plea hearing, after the trial court found Fortes guilty of both crimes, the parties and the trial court had the following exchange concerning the presentence investigation (PSI) report:[2]

[Trial counsel]:  I believe the State is requesting a PSI.

[State]:       The State is requesting a PSI . . . .

[Trial counsel]:  I had previously discussed this with the State and they don't object that the PSI should be without a recommendation.

[State]:       That's correct.

THE COURT:  All right.

¶ 5.   Consistent with trial counsel's request, the PSI report did not contain a recommendation concerning the length of sentence. At the sentencing hearing,

---

[2] Throughout this decision, when this court quotes from transcripts or written orders, we have substituted "trial counsel" in place of the attorney's name. We have also capitalized the word State when referring to the State as a party.

253

neither party mentioned the existence of a plea agreement until the State began to offer its sentencing recommendation, which led to this exchange:

[State]: As to count one . . . the State is recommending three years [of] initial confinement, three years [of] extended supervision consecutive.

[Trial counsel]: Judge, I apologize for interrupting the State, but at least both myself and Mr. Fortes remembered that when we entered the plea that there was going to be a request for a PSI but the sentence would be left up to the court. That's not what the State remembers. But at least I have it written down in my file and that's what Mr. Fortes remembers was the recommendation.

THE COURT: Well, the recommendation is not in the guilty plea questionnaire waiver of rights form.

[Trial Counsel]: Correct. And I indicated to the State that the reason I specifically asked for no recommendation from the PSI is because the State I thought was leaving the sentence up to the court.

[State]: Your Honor, my notes reflected February 1, 2012, as to both defendants, upon a guilty plea to all charges both sides are free to argue, PSI ordered. Robbery will be read in. And as you may recall when the [co-defendant] was sentenced last week, I gave [a] specific recommendation as to her because both sides were free to argue and I gave the same recommendation

254

as to both defendants and I have it noted in my file and dated.

[Trial counsel]: I discussed it with Mr. Fortes, and this is not something that he wants to withdraw his plea over and he's prepared to proceed to sentencing.

THE COURT: Is that correct, sir?

DEFENDANT: Yes, sir.

THE COURT: And you want to proceed to sentencing on today's date?

DEFENDANT: Yes, sir.

THE COURT: You understand the court is not bound by any negotiations or plea bargains regardless. And you stand before the court on a substantial battery and I think the burglary; is that correct?

DEFENDANT: Yes, sir.

The State then continued with its recommendation, which was for three years of initial confinement and three years of extended supervision for the aggravated battery, consecutive to three years of initial confinement and five years of extended supervision for the burglary.

¶ 6. After the State completed its sentencing argument, trial counsel gave the defense's recommendation. Trial counsel's remarks included a reference to the confusion concerning the plea agreement and led to the following exchange with the trial court, trial counsel, and Fortes:

[Trial counsel]: Even when we thought that the Assistant District Attorney was going [to]

255

leave the sentence up to the court as the pre-sentence did, we were going to come in here today and say we understand given the serious nature of this case, given Mr. Fortes and his background that this is a prison case. We were going to ask for prison any way.

I certainly don't think there needs to be this incredibly lengthy sentence that the State —

THE COURT: What you're telling to the court and your client agrees [is] that there is no issue as to any breach of [the] plea agreement?

[Trial counsel]: Correct.

THE COURT: Is that correct, sir?

DEFENDANT: Yes, sir.

[Trial counsel]: He's willing to proceed and let the State make their recommendation. Because we know that Your Honor is the ultimate determin[er] of the sentence.

THE COURT: Okay.

¶ 7. There was no further discussion of the plea agreement and trial counsel continued giving his recommendation, which was to sentence Fortes to two concurrent terms of three years of initial confinement and three years of extended supervision. The trial court ultimately sentenced Fortes consistent with the State's recommendation, imposing a total sentence of six years of initial confinement and eight years of extended supervision.

256

¶ 8.   Postconviction/appellate counsel was appointed for Fortes and she filed a postconviction motion on Fortes's behalf. The postconviction motion sought "resentencing before a different judge together with specific performance of the plea agreement." The motion alleged that Fortes "did not know he had a constitutional right to enforcement of the plea agreement" and "was not advised and did not know he could seek specific performance of the plea agreement." The motion further asserted that the State breached the plea agreement by making a recommendation after previously agreeing to make no sentencing recommendation. The motion concluded with a request for "resentencing before a different judge or an evidentiary hearing to determine breach of the agreement or, in the alternative, to determine ineffective assistance of counsel."

¶ 9.   The trial court granted Fortes's request for an evidentiary hearing. Fortes, trial counsel, and the prosecutor all testified. The parties submitted proposed findings of fact and conclusions of law and the trial court adopted the State's proposals. The trial court said that it was denying Fortes's postconviction motion because he had "failed to establish (1) that a material and substantial breach of the plea agreement occurred; and/or (2) that his attorney provided ineffective assistance of counsel."

¶ 10.   In its written order, the trial court found that the offer the State made at the scheduling conference was that in exchange for Fortes's guilty pleas to the two charges, the State would not add a third charge of robbery, the uncharged crime would be read in, and "[b]oth sides would be free to argue, meaning that the State would be free to make any recommendation it desired." The trial court said that the benefits

to Fortes of accepting the offer "included possible credit for taking prompt responsibility and that the State would be precluded from filing the additional [r]obbery charge in the future." The trial court further found:

Trial counsel conveyed this recommendation (free to argue) to Fortes, who expressed a desire for a more specific recommendation. Trial counsel contacted [the prosecutor] and spoke with her the day before Fortes's plea hearing. [The prosecutor] then informed trial counsel that if she were to recommend a specific number, it would be close to the maximum. Trial counsel discussed this conversation with Fortes and they decided not to opt for this offer. It was at that time that trial counsel and Fortes discussed the offer being "sentence up to the court." [The State's] offer, at all times relevant to these proceedings, was for a plea to both charged counts, and both sides free to argue. To the extent that trial counsel communicated a different offer to Fortes the day before the plea hearing, he did so in error.

¶ 11. The trial court's order stated that at the time of the plea hearing, the prosecutor "believed the defendant was pleading guilty with an agreement that both sides were free to argue at sentencing," while "[a]t the same time, trial counsel and Fortes believed Fortes was pleading guilty with an agreement that the State would leave the sentence up to the court." The trial court recognized: "At the time of Fortes's plea, the parties were not in agreement as to what the State would be recommending. As such, no agreement existed between the parties as to what the State's recommendation would be at the time of sentencing." The trial court concluded: "One cannot breach a non-existent plea agreement . . . . [T]he State did not

258

breach any plea agreement when it made a specific recommendation at sentencing."

¶ 12. The trial court also made findings with respect to Fortes's decision to proceed with sentencing once this issue arose at the sentencing hearing. The trial court found:

Once this mutual misunderstanding came to light, trial counsel consulted with Fortes as to how Fortes wished to proceed. At that time, trial counsel discussed three options with Fortes: (1) Fortes could seek to withdraw his guilty plea; (2) they could seek an adjournment in hopes of obtaining the transcript from the plea hearing; or (3) they could proceed with sentencing and make their own sentencing recommendation. The rationale behind potentially reviewing the plea hearing transcript would be in hopes that it would state the plea negotiations and reveal that said negotiations comported with the defense's understanding of what the offer had been. Trial counsel provided these options to Fortes, but left the decision as to how to proceed up to Fortes.

After hearing these options and conferring with trial counsel, it was Fortes's decision to forego withdrawing his plea and reviewing the plea transcript. It was Fortes's choice to proceed with sentencing at that time. Fortes desired to conclude the case and did not wish to face the potential addition of a [r]obbery charge.

. . . .

While trial counsel did not use the term "specific performance" to explain to Fortes that Fortes had a right to seek to enforce any agreed upon recommendation, trial counsel explained to Fortes that they could try to obtain the plea hearing transcript in hopes that it would show that the plea offer was for [the] State to leave the sentence up to the court. This is tantamount

259

to providing Fortes with the option to try to discover and then enforce what the defense believed were the plea negotiations. Fortes made the decision not to choose this option and chose, instead, to proceed with sentencing. As such, Fortes made a free, voluntary, and intelligent waiver of any right of specific performance.

(Paragraph numbering omitted.)

¶ 13. In addition to finding that Fortes had waived his right of specific performance, the trial court found that Fortes "made a free, voluntary, and intelligent waiver of his ability to seek to withdraw his guilty pleas based upon this mutual misunderstanding of the State's recommendation." The trial court explained:

> Trial counsel fully explained to Fortes that Fortes could seek to withdraw his guilty plea based upon the mutual misunderstanding of the State's plea offer. Mr. Fortes, after consideration of the information provided by his counsel, made the decision himself to forego a possible plea withdrawal and chose to proceed with sentencing.

(Paragraph numbering omitted.)

¶ 14. Finally, the trial court found that trial counsel had not provided ineffective assistance, explaining:

> Trial counsel could not object to a breach of a non-existent plea agreement. Trial counsel fully consulted with Fortes about Fortes's options once the mutual misunderstanding of the State's offer came to light. Because his performance was neither deficient nor prejudicial to the defendant, trial counsel did not provide the defendant with ineffective assistance.

(Paragraph numbering omitted.)

¶ 15. Eight months after the trial court denied Fortes's postconviction motion, postconviction/appellate counsel filed a "supplemental" postconviction motion that sought resentencing before a different judge, withdrawal of the guilty pleas, or other appropriate relief. (Capitalization omitted.) As relevant to this appeal,[3] Fortes argued "[t]hat the trial court's plea colloquy erroneously omitted inquiry as to the existence and terms of a plea agreement," contrary to *State v. Bangert*, 131 Wis. 2d 246, 389 N.W.2d 12 (1986), and Wis. Stat. § 971.08. Fortes also argued that his plea "was not intelligently, voluntarily and knowing[ly] entered because he entered his plea pursuant to a plea agreement without knowledge that the terms of the plea agreement conveyed to him by trial counsel were inaccurate."

¶ 16. The second issue relevant to this appeal that was raised in the supplemental postconviction motion was whether trial counsel provided ineffective assistance when he "failed to convey to [Fortes] an accurate recital of the plea agreement and also failed to inform him of his right to enter an objection to the prosecutor's failure to adhere to the terms of the plea agreement." The motion asserted that if Fortes had known he had a right to object to the prosecutor's failure to follow the agreement, "[h]e would have pursued a hearing to determine and resolve the terms of the plea agreement."

¶ 17. The trial court denied the motion without a hearing. Its written order noted that the plea hearing issues had already been resolved, explaining:

---

[3] On appeal, Fortes does not pursue all of the issues raised in his supplemental postconviction motion. We discuss only those issues relevant to this appeal.

The court may have sentenced the defendant despite the defendant's misunderstanding about the plea agreement, but he opted to continue with sentencing rather than withdraw his plea. He waived his right to raise this issue when he opted to proceed with sentencing under the circumstances. Therefore, whether the court failed to ascertain [the] precise terms of the plea agreement either at the plea hearing or the sentencing hearing is not a viable claim at this juncture. In addition, any claim that trial counsel was ineffective for failing to convey the correct terms of the plea agreement to the defendant has already been resolved. The defendant's desire to continue with the sentencing after being given the option of withdrawing his plea constitutes a waiver of any objection over counsel's failure to accurately convey the plea agreement.

This appeal follows.

## STANDARDS OF REVIEW

¶ 18.   On appellate review, the issue of whether a plea was knowingly, intelligently, and voluntarily entered is a question of constitutional fact. *See State v. Hoppe*, 2009 WI 41, ¶ 59, 317 Wis. 2d 161, 765 N.W.2d 794. In determining whether plea withdrawal is warranted, "[w]e accept the [trial] court's findings of historical and evidentiary facts unless they are clearly erroneous but we determine independently whether those facts demonstrate that the defendant's plea was knowing, intelligent, and voluntary." *State v. Brown*, 2006 WI 100, ¶ 19, 293 Wis. 2d 594, 716 N.W.2d 906. Similarly, a claim of ineffective assistance of counsel also presents a mixed question of law and fact. *State v. Carter*, 2010 WI 40, ¶ 19, 324 Wis. 2d 640, 782 N.W.2d 695. "We will uphold the [trial] court's findings of fact unless they are clearly erroneous," but "the ultimate

determination of whether counsel's assistance was ineffective is a question of law, which we review *de novo.*" *Id.* (italics added).

## DISCUSSION

¶ 19. On appeal, Fortes seeks plea withdrawal or resentencing. He argues that at a minimum, he is entitled to an evidentiary hearing and a *Machner* hearing.[4]

¶ 20. Fortes's first set of arguments relates to the plea agreement and his plea hearing. Fortes argues that he is entitled to withdraw his plea because it "was not intelligently, voluntarily and knowingly entered because he did not know at the time of his plea that the terms recited to him were inaccurate." Citing *Brown*, 293 Wis. 2d 594, ¶ 35, Fortes also argues that the trial court was required "to ascertain before accepting a plea whether any agreements were made in anticipation of the plea." Fortes asserts that he has not waived these issues—despite telling the trial court he wanted to proceed with sentencing—because of the following statements in *Brown*:

Under our rules, a defendant can wait until he knows his sentence before he moves to withdraw his plea, and he may not be disadvantaged by this delay as long as he is able to point to a deficiency in the plea colloquy. Thus, only the court, with the assistance of the district attorney, can prevent potential sandbagging by a defendant by engaging the defendant at the plea colloquy and making a complete record.

[4] *See State v. Machner*, 92 Wis. 2d 797, 285 N.W.2d 905 (Ct. App. 1979).

*See id.*, ¶ 38. Finally, Fortes asserts that the trial court erroneously found that there was no breach of the plea agreement.

¶ 21.  The second set of issues raised by Fortes relates to ineffective assistance of counsel. Fortes argues that his trial counsel performed deficiently by:  (1) failing to object to the State's breach of the plea agreement; (2) failing to inform Fortes that he had a right to object to the breach of the plea agreement; and (3) failing to inform Fortes that he could "pursue specific performance of the plea agreement." Fortes further asserts that he did not waive his "right to pursue specific performance and be informed of the right to do so" even though he opted to proceed with sentencing, citing *State v. Scott*, 230 Wis. 2d 643, 602 N.W.2d 296 (Ct. App. 1999).

¶ 22.  We are not persuaded by Fortes's arguments. First, we reject his challenge to the trial court's findings concerning the existence of a plea agreement. The trial court heard testimony from the State, trial counsel, and Fortes. It assessed the credibility of the witnesses and found that "at all times relevant to these proceedings," the State's plea offer "was for a plea to both charged counts, and both sides free to argue." The trial court further found that "[t]o the extent that trial counsel communicated a different offer to Fortes the day before the plea hearing, he did so in error." At the same time, the trial court accepted trial counsel's and Fortes's assertion that they "believed Fortes was pleading guilty with an agreement that the State would leave the sentence up to the court." Based on those findings, which are supported by the testimony at the hearing, the trial court's finding that there was a mutual misunderstanding about the plea agreement

—and therefore no plea agreement—was not clearly erroneous. *See* WIS. STAT. RULE 805.17(2), made applicable to criminal proceedings by WIS. STAT. § 972.11(1).

¶ 23.  Next, we conclude that even if we accept Fortes's assertion that the trial court, the State, and trial counsel erred at the plea hearing when they failed to accurately state the plea agreement and ascertain Fortes's understanding of that agreement, Fortes waived his right to pursue that issue when he elected to proceed with sentencing instead of seeking plea withdrawal or an opportunity to determine the plea agreement. While a defendant may generally be able to wait until after sentencing to decide whether to allege a deficiency in the plea colloquy, *see Brown*, 293 Wis. 2d 594, ¶ 38, we are not convinced that proposition applies where a concern about the defendant's understanding of the plea has been raised *prior* to sentencing and the defendant specifically elects to proceed with sentencing. Indeed, our supreme court has recognized that a defendant can waive his right to object if he "persist[s] in a plea strategy after the basis for the claim of error is known to [the] defendant." *See Farrar v. State*, 52 Wis. 2d 651, 660, 191 N.W.2d 214 (1971). Here, Fortes explicitly elected to proceed with the sentencing, despite knowing that he had a different understanding of the plea agreement than the State and that the State intended to recommend a specific sentence. In doing so, Fortes waived his right to subsequently seek plea withdrawal based on his misunderstanding of the plea agreement, the trial court's plea colloquy, or the State's decision to recommend a specific sentence. *See id.*

¶ 24.  The case of *State v. Paske*, 121 Wis. 2d 471, 360 N.W.2d 695 (Ct. App. 1984) is also instructive. In

*Paske*, we held that a defendant waived his right to a hearing on the alleged breach of the plea agreement "by expressly choosing to proceed with the sentencing after being made aware of the change in the prosecutor's sentencing recommendation." *Id.* at 472. In *Paske*, the defendant entered into a plea agreement whereby the district attorney agreed to recommend a sentence for a term not to exceed eleven years in return for the defendant's guilty plea to seventeen felonies and one misdemeanor. *Id.* While incarcerated and awaiting sentencing, Paske conspired with other inmates to escape from jail. *Id.* At the sentencing proceeding, the prosecutor said that he would not stand by the original sentencing recommendation, but would instead make no sentencing recommendation on the original eighteen counts. *Id.* at 473. In response, trial counsel acknowledged that the defendant had the right to withdraw his pleas, but said that after discussing the matter with Paske, they "elected not to do that, but rather to proceed with sentencing today." *Id.* After sentencing, when Paske argued that he should be allowed to withdraw his pleas, we disagreed, holding that he had waived his right to do so and explaining:

> In the instant case . . . [the defendant's] no contest pleas were reaffirmed with full prior knowledge of the [S]tate's altered position on sentencing. [The defendant's] reaffirmation of the pleas further spurned the [S]tate's thrice conveyed offer (twice before the sentencing proceeding and once at the sentencing proceeding itself) not to oppose a request to withdraw the pleas.

*Id.* at 474.

¶ 25. In this case, Fortes was made aware that the State believed the plea agreement allowed it to make a specific recommendation and that the State

266

intended to do so. As the trial court later found, Fortes was specifically informed that he had options, including seeking to withdraw his guilty plea, seeking "an adjournment in the hopes of obtaining the transcript from the plea hearing," or proceeding with sentencing. Fortes elected to proceed with sentencing, and he personally reaffirmed that decision on two occasions at the sentencing hearing. We conclude that Fortes, like the defendant in *Paske*, waived his right to seek plea withdrawal when he elected to move forward with sentencing, knowing that the State would be making a specific sentencing recommendation. *See id.*; *see also Farrar*, 52 Wis. 2d at 660.

¶ 26.   Fortes urges this court to follow the court's reasoning in *Scott*, rather than in *Paske*. In *Scott*, the State informed the trial court at sentencing that it was "withdrawing from the agreement post plea because her successor, who renegotiated the agreement had no 'approval' from the district attorney to make the offer" that was made. *Id.*, 230 Wis. 2d at 650. This court concluded that Scott "had a substantive due process right to enforce the original plea agreement he had with the State" and remanded for resentencing. *See id.* at 664–65. In doing so, we distinguished *Paske*, noting:

> Prior to sentencing, Paske conspired to escape from jail and was found guilty of that offense *after* the original plea agreement had been reached. In light of that development, the State made a new offer which included the escape charge coupled with the obligation to make no sentencing recommendation . . . .
>
> In the instant case, the State reached a plea agreement with Scott. Scott entered no contest pleas pursuant to the agreement. He relinquished his "bargaining chip." Thereafter, the State reconsidered its

267

sentencing recommendation and unilaterally sought to modify the sentencing recommendation.

Once Scott and the State reached an agreement and the no contest pleas were entered, Scott did nothing to contravene, violate or breach the agreement. Thus, Scott had a constitutional right to seek enforcement of the plea agreement.

*Scott*, 230 Wis. 2d at 663–64.

¶ 27.  We are not convinced that *Scott* compels a reversal in this case. As the trial court ultimately determined, the State did not seek to unilaterally modify what it previously agreed to recommend. Rather, the State believed that the agreement was that it was free to argue, while trial counsel and Fortes believed the State had agreed not to make a specific recommendation. Thus, there was a mutual misunderstanding. At sentencing, Fortes specifically told the trial court that he wished to proceed with sentencing, despite the confusion over what the State had agreed to recommend. He cannot now be heard to complain about a course of action he selected. *See Farrar*, 52 Wis. 2d at 661–62 (Where issue is whether defendant seeking plea withdrawal should be relieved of his waiver of an issue that was raised prior to sentencing, "there is no sound reason for so doing where a defendant, as a matter of trial tactics and strategy, elects to forego objection and chooses to proceed down an alternative road leading in a different direction.") (footnote omitted).

■

¶ 28.  Next, we consider Fortes's argument that his trial counsel provided ineffective assistance. To prevail on an ineffective-assistance-of-counsel claim, "a defendant must demonstrate that (1) counsel's per-

268

formance was deficient, and (2) the deficiency was prejudicial." *State v. Harbor*, 2011 WI 28, ¶ 67, 333 Wis. 2d 53, 797 N.W.2d 828 (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). "We need not address both components of the inquiry if the defendant fails to make an adequate showing on one." *Harbor*, 333 Wis. 2d 53, ¶ 67.

¶ 29.  Fortes argues that trial counsel performed deficiently by: (1) failing to object to the State's breach of the plea agreement; (2) failing to inform Fortes that he had a right to object to the breach of the plea agreement; and (3) failing to inform Fortes that he could "pursue specific performance of the plea agreement." Contrary to Fortes's assertions, trial counsel did, in fact, bring his concern about the State's recommendation to the trial court's attention at the sentencing hearing. Further, the trial court found that Fortes was informed "that they could try to obtain the plea hearing transcript in hopes that it would show that the plea offer was for the State to leave the sentence up to the court," which the trial court said was "tantamount to providing Fortes with the option to try to discover and then enforce" the plea agreement as Fortes understood it. The trial court's findings are not clearly erroneous, and we agree that trial counsel did not perform deficiently when he advised Fortes about his options.

¶ 30.  Not only has Fortes not shown that his trial counsel performed deficiently, he has not adequately explained how he was prejudiced by trial counsel's alleged deficiencies. He asserts that he was automatically prejudiced when trial counsel failed "to formally object to the breach of the plea agreement and inform Fortes of this right to do so." Fortes implies that trial

269

counsel should have sought to enforce the plea agreement. However, as we have explained, trial counsel did, in fact, raise the issue at the sentencing hearing. Further, the trial court later determined that there was no plea agreement due to the parties' mutual misunderstanding. Thus, Fortes has not shown "that 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.' " *See Harbor*, 333 Wis. 2d 53, ¶ 72 (citation omitted).

■

¶ 31.　Finally, Fortes argues that he is entitled to an evidentiary hearing on his motions. We are not convinced. The trial court conducted a full evidentiary hearing on Fortes's first motion, which included testimony about trial counsel's performance, and the trial court made factual findings that adequately addressed the issues Fortes has raised. Fortes has not shown that another hearing is needed.[5]

*By the Court.*—Judgment and orders affirmed.

■

[5] We decline to address whether Fortes's supplemental postconviction motion is also procedurally barred by *State v. Escalona-Naranjo*, 185 Wis. 2d 168, 517 N.W.2d 157 (1994), as the State contends. *See State v. Blalock*, 150 Wis. 2d 688, 703, 442 N.W.2d 514 (Ct. App. 1989) ("[C]ases should be decided on the narrowest possible ground.").