STATE of Wisconsin, Plaintiff-Respondent,†

v.

Robert C. DEILKE, Defendant-Appellant.

Court of Appeals

*Nos. 02–2897–CR, 02–2898–CR. Submitted on briefs June 9, 2003.—Decided June 24, 2003.*

2003 WI App 151

(Also reported in 667 N.W.2d 867.)

† Petition to review granted 10-1-03.

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Kelly J. McKnight* and *Wachowski & Johnson, S.C.*, of Eau Claire.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *G. Richard White*, district attorney, of Eau Claire.

Before Cane, C.J., Hoover, P.J., and Peterson, J.

¶ 1. HOOVER, P.J.[1]  Robert Deilke appeals an order releasing the State from plea agreements in Eau Claire County cases No. 93–CT-174 and No. 00–CT-250, thereby allowing the State to reinstate charges against Deilke. He also appeals the resulting judgments of conviction for operating with a prohibited blood alcohol concentration. Deilke contends the trial court erred when it concluded he had breached the plea agreements

---

[1] This case was originally assigned as a one-judge opinion. Upon our own motion and by order dated May 19, 2003, this case was assigned to a three-judge panel.

in the two cases by collaterally attacking them in a subsequent case.[2] We agree with Deilke and reverse the judgments and order.

## Background

¶ 2. In case No. 93–CT-174, Deilke was charged with operating while intoxicated (OWI), second offense; operating with a prohibited blood alcohol concentration (PAC), second offense; and operating after revocation, first offense. Pursuant to a plea agreement, Deilke pled guilty to the OWI; the State dismissed the remaining charges. Deilke served his full sentence.

¶ 3. In No. 00–CT-250, Deilke was charged with OWI, fourth offense and PAC, fourth offense. Pursuant to a plea agreement, Deilke pled guilty to the OWI and the PAC was dismissed. He again served his full sentence.

¶ 4. In March 2001, Deilke was charged in case No. 01–CF-163 with OWI and PAC, both as fifth offenses. The 1993 and 2000 convictions formed part of the factual basis for charging the 2001 case as a fifth offense. In July 2001, Deilke filed a motion to collaterally attack all of his underlying convictions for penalty enhancement purposes, including the 1993 and 2000

---

[2] Deilke also raised, before the trial court and on appeal, issue preclusion, statutory interpretation of Wis. Stat. § 346.63(1)(c), and the statute of limitations in 93–CT-174. We conclude that this appeal can be disposed of on the plea agreement issue alone. *See State v. Castillo*, 213 Wis. 2d 488, 492, 570 N.W.2d 44 (1997) (cases should be decided on the narrowest possible ground). As such, we do not address the arguments on the other issues, and certain facts relevant to those arguments are excluded from the background.

All references to the Wisconsin Statutes are to the 2001–02 version unless otherwise noted.

convictions. In August 2001, the court granted Deilke's motion and held the convictions invalid for penalty enhancement.

¶ 5.   In September 2001, the State filed a motion to vacate the plea agreements and reinstate the charges dismissed in the 1993 and 2000 cases.[3] It alleged that Deilke had violated the terms of the plea agreements in those cases by collaterally attacking them in the 2001 case.

¶ 6.   Deilke contended, among other things, that his collateral attacks did not breach any plea agreement. The trial court disagreed, releasing the State from the plea agreement and allowing it to reinstate the dismissed PAC charges. Deilke then pled no contest to the two PAC charges. The court did not order any additional sentence, however, concluding Deilke had already been punished when he served the sentences for the OWI convictions. Deilke now appeals the order vacating the plea agreements and allowing the State to reinstate the PAC charges and the judgments of conviction.

## Discussion

■■■■■■

¶ 7.   "[A] plea agreement may be vacated where a material and substantial breach of the plea agreement has been proved." *State v. Rivest*, 106 Wis. 2d 406, 414, 316 N.W.2d 395 (1982). The party seeking to vacate the agreement has the burden of establishing both the fact of a breach and that the breach was sufficiently material to warrant releasing the party, whether prosecution or defense, from its promises. *See id.*

---

[3] The State filed motions to reinstate charges in all the cases Deilke successfully attacked. Case No. 93–CT-174 and case No. 00–CT-250 were heard by Judge Eric Wahl.

¶ 8. Terms of the plea agreement and historical facts surrounding the conduct that allegedly constitutes the breach are questions of fact that we will not disturb unless they are clearly erroneous. *State v. Williams*, 2002 WI 1, ¶ 5, 249 Wis. 2d 492, 637 N.W.2d 733. Whether the conduct actually constitutes a breach, however, is a question of law. *Id.* If there is a material or substantial breach, then the plea agreement may be vacated. *Id.*

¶ 9. The question before us is whether Deilke's collateral attacks on the 1993 and 2000 convictions, in the context of his 2001 case, constitute violations of the 1993 and 2000 plea agreements. For the reasons that follow, we conclude they do not.

¶ 10. The trial court concluded

> Deilke in each incident received the benefit of some bargain with the District Attorney. In most instances the District Attorney, in exchange for a plea to the OWI charges, dismisses any other traffic citations which are part of the file. In other instances, lower guideline penalties are applied as an inducement for the defendant to plead to the charge. . . . By collaterally attacking those convictions, Deilke has himself repudiated the agreement . . . .

The court also found that Deilke had fulfilled all the terms of punishment in the cases and noted that he had a right to collaterally challenge the prior pleas that had been entered without the benefit of counsel.

¶ 11. Notably missing from the trial court's analysis, however, is any finding regarding what benefit the State bargained for in the plea agreements. If there is a breach, it must be material and substantial. *Id.* Thus, at

279

a very minimum, when asked to vacate a plea agreement, a trial court should be able to ascertain what harm befell the nonbreaching party.

¶ 12. When arguing to reinstate the dismissed charges, the State claimed the benefit it bargained for in the original plea negotiations was the ability to establish the earlier convictions for use in penalty enhancement if there were any subsequent convictions. An explicit finding regarding the benefits the State sought, however, is absent. Even if the trial court had explicitly accepted that the State originally bargained for future use of Deilke's conviction, the State nevertheless concedes that no such expectation was ever articulated to Deilke during the plea negotiations nor, more importantly, in the plea agreement itself.

█

¶ 13. In an attempt to ascertain the rights of aggrieved parties, plea agreements are frequently analogized to contracts. *See, e.g., Rivest*, 106 Wis. 2d at 413. One fundamental, well-known principle underlying contract law is the "meeting of the minds." The State concedes it never informed Deilke it was seeking the specific benefit of using his convictions for later penalty enhancement. Thus, Deilke cannot be deemed to know that, in exchange for potentially lesser penalties, he was providing the later use of his convictions for enhancement purposes. We conclude Deilke could not have materially or substantially breached the plea agreement based on an unarticulated condition.

¶ 14. The State contends

> it is utterly unreasonable to suggest anything other than that an essential purpose of the plea agreement in these cases was to obtain convictions which would be

available for penalty enhancement purposes in the event that the defendant was arrested for OWI offenses in the future.

We reject this contention.

¶ 15. The State explicitly traded reduced charges and lower potential penalties for guilty pleas in order to secure convictions against Deilke and ensure his punishment. While the State contends those convictions are now useless because they cannot be used for penalty enhancement, the State cannot deny that it received the convictions. It also cannot deny that Deilke was punished, completing each sentence imposed.

¶ 16. The State, however, also receives multiple benefits as a natural consequence of a plea agreement, rather than through direct negotiation. For example, the State is relieved of its burden of proof. Here, the State contends this consideration is irrelevant because it could have proceeded to trial and had more than sufficient evidence to convict Deilke. But this argument exposes further benefits of a plea agreement—district attorneys are relieved of part of their workload. There is no need for discovery, motion hearings, witness preparation, jury selection, or the time actually spent at trial. Moreover, the State is relieved of the administrative and personnel costs associated with a trial.

¶ 17. The State nonetheless encourages us to examine *State v. Robinson*, 2002 WI 9, 249 Wis. 2d 553, 638 N.W.2d 564, and *State v. Lange*, 2003 WI App 2, 259 Wis. 2d 774, 656 N.W.2d 480, to find support for its arguments. Neither case is availing.

¶ 18. In *Robinson*, the defendant was originally charged with aggravated battery and reckless endangerment. *Robinson*, 249 Wis. 2d 553, ¶ 5. Pursuant to the plea agreement, the State reduced the battery

charge to a second reckless endangerment charge. *Id.*, ¶ 6. As the parties acknowledged, this served to reduce Robinson's exposure from twenty-seven years in prison to ten. *Id.* Robinson pled no contest, but later challenged the plea, claiming the charges were multiplicitous. *Id.*, ¶¶ 7, 9. The supreme court concluded his challenge repudiated the agreement and returned the parties to the position they occupied before the plea was reached. *Id.*, ¶ 31. That is, the battery and the singular endangerment charges were reinstated. *Id.*, ¶ 58.

¶ 19.   Based on *Robinson,* the State contends:

> In *Robinson,* there was no explicit statement in the plea agreement that the defendant could not attack his multiplicitous convictions. Here, the plea agreement did not explicitly state that [Deilke] could not collaterally attack the validity of these convictions. In this case, just as in *Robinson,* the conclusion should be that the conduct of the appellant amounts to a repudiation of the plea agreement because it deprives the State of the benefit for which it bargained.

*Robinson,* however, is distinguishable.

¶ 20.   In *Robinson,* the defendant had not served his sentence. The State expected Robinson to face ten years' imprisonment in exchange for his guilty plea. *See id.,* ¶ 10. If Robinson had succeeded in merely vacating one of the endangerment charges, he would face only five years' imprisonment—half of what the State bargained for. *Id.,* ¶ 20. For that reason, the supreme court determined that the remedy was to restore the parties to their pre-agreement position. *Id.,* ¶ 31.

¶ 21.   In this case, the future use of Deilke's plea-based convictions was never made a condition of the agreement. Moreover, Deilke served all the time, paid all the fines, and attended all the classes he was ordered to when he was convicted.

¶ 22. Because of procedural differences, *Lange* is also not helpful to the State's analysis. Lange appealed the trial court's order denying his motion to withdraw his plea based on an inadequate plea colloquy. *Lange*, 259 Wis. 2d 774, ¶ 1. The problem with Lange's challenge was that, as part of the plea agreement, he had agreed to plead guilty to a charge in a different circuit court branch. *Id.*, ¶ 31. That second plea resulted in a judgment of conviction that was not part of the appeal. While we ultimately concluded that the plea in the second case would have to be vacated if Lange prevailed on his motion to withdraw, we were merely providing guidance for the court on remand. *Id.*, ¶ 37. The outcome of the case ultimately hinged on a *Bangert* hearing regarding the plea's validity.[4] *Lange* is factually and procedurally distinct.

¶ 23. Here, Deilke served his sentences in their entirety. The State was not materially or substantially deprived of any benefits it expressly sought and acquired through its plea agreements with Deilke. Its contended harm arises from an unspoken expectation not evident or explained to Deilke during the plea process. Deilke could not breach a plea agreement by failing to comply with an unarticulated requirement.

*By the Court.*—Judgments and order reversed.[5]

---

[4] *State v. Bangert*, 131 Wis. 2d 246, 389 N.W.2d 12 (1986).

[5] The convictions for OWI in both cases remain intact, even though they are included in the judgments.