STATE of Wisconsin, Plaintiff-Respondent-Petitioner,

v.

Robert C. DEILKE, Defendant-Appellant.

Supreme Court

*Nos. 02–2897–CR, 02–2898–CR. Oral argument February 11, 2004.—Decided July 8, 2004.*

2004 WI 104

(Also reported in 682 N.W.2d 945.)

BRADLEY, J., dissents.
ABRAHAMSON, C.J., joins.
SYKES, J., took no part.

For the plaintiff-respondent-petitioner the cause was argued by *Kathleen M. Ptacek,* assistant attorney general, with whom on the briefs was *Peggy A. Lautenschlager,* attorney general.

For the defendant-appellant there was a brief by *Kelly J. McKnight* and *Wachowski & Johnson, S.C.,* Eau Claire, and oral argument by *Kelly J. McKnight.*

¶ 1. PATIENCE D. ROGGENSACK, J. The State of Wisconsin requests review of a decision of the court of appeals that reversed an order of the circuit court for Eau Claire County vacating plea agreements between Robert C. Deilke and the State, and permitting the State to reinstate charges against Deilke, which resulted in convictions that the court of appeals also reversed.

¶ 2. We conclude that the circuit court, Judge J. Eric Wahl, presiding, correctly held that Deilke's successful collateral challenge to his convictions constituted a material and substantial breach of the plea agreements on which the convictions were based. Further, because we agree with the circuit court that the appropriate remedy for the breach was to vacate the plea agreements and reinstate those original charges for which the State requested reinstatement and to accept Deilke's subsequent guilty pleas, we reverse the decision of the court of appeals.

## I. BACKGROUND

¶ 3. On May 12, 1993, the State charged Deilke with one count of operating a motor vehicle while intoxicated (OMVWI),[1] second offense (OMVWI-2nd), and one count of operating with a prohibited alcohol

---

[1] Wis. Stat. § 346.63(1)(a) (2001–02). Because there is no difference among the statutes that were in effect on the various dates of Deilke's violations that is material to the issues presented, we use the 2001–02 version of the statutes. Additionally, unless otherwise noted, all further references are to the 2001–02 version.

content (PAC),[2] second offense (PAC-2nd). Deilke entered a guilty plea and was convicted of the OMVWI-2nd. The court dismissed the PAC-2nd.

¶ 4. On March 3, 1994, Deilke was arrested and charged with one count of OMVWI-3rd, one count of PAC-3rd, and one count of operating after revocation (OAR).[3] On March 19, 1994, Deilke was arrested again and charged with OMVWI and PAC, as third offenses because he had not yet been convicted of the charges that arose out of his March 3 conduct. He also was charged with OAR-2nd. Subsequently, Deilke pled guilty to the March 3 OMVWI-3rd, and the State dismissed five other charges: the March 3 PAC-3rd, the March 3 OAR, the March 19 OMVWI, the March 19 PAC and the March 19 OAR.

¶ 5. On March 29, 2000, Deilke was arrested again and charged with one count of OMVWI-4th and one count of PAC-4th. Deilke pled guilty and was convicted of the OMVWI-4th. The PAC-4th was dismissed as part of the plea agreement.

¶ 6. On March 8, 2001, Deilke was arrested, yet again, and charged with one count of OMVWI-5th and one count of PAC-5th. His convictions in 1993, 1994 and 2000, as well as one earlier conviction, served as the basis for charging the violations as fifth offenses. *See* Wis. Stat. § 343.307 (explaining which convictions count as prior convictions for charging purposes). In this case, however, Deilke filed a motion to collaterally attack his earlier OMVWI convictions, arguing that his plea colloquies in those cases did not show that he had validly waived his right to counsel. The State agreed no

---

[2] Wis. Stat. § 346.63(1)(b).

[3] Wis. Stat. § 343.30(1q).

valid waiver of the right to counsel occurred, and the circuit court granted Deilke's motion.

¶ 7. Deilke's successful collateral challenge to the validity of his 1993, 1994 and 2000 convictions caused none to be available for use as penalty enhancers for the 2001 charges and for any OMVWI charges that may be brought subsequently. The State moved to vacate the plea agreements and to reinstate three of the dismissed PAC charges. It argued that Deilke breached the plea agreements by his successful collateral attack.

¶ 8. The circuit court granted the State's motion in the 1993 and 2000 cases.[4] The State reinstated the dismissed PAC charges in those cases, and Deilke, with the advice of counsel, pled no contest to them. The State requested no additional punishment for the convictions.[5] Deilke appealed the order allowing the State to vacate the plea agreements and reinstate the PAC charges, as well as the judgments of conviction.

¶ 9. The court of appeals reversed, concluding that Deilke had served his sentences, and that his collateral attack on the three judgments of conviction did not materially and substantially breach the plea agreements. According to the court of appeals, the State

---

[4] The State's motion regarding Deilke's 1993 and 2000 cases was granted by the circuit court for Eau Claire County, Judge Eric J. Wahl, presiding. The State's motion regarding Deilke's 1994 conviction was denied by a different judge in a different circuit court branch and is not part of this appeal.

[5] In arguing the equities of its position, the dissent asks, "How can you undo the forfeiture of his car and the period of time that he was without its use?" Dissent, ¶ 51. The answer to this query is that there is no need to undo it because no further sentence was given Deilke. He received and served the sentence for which he entered the plea bargains, and his later PAC convictions did not change that.

did not tell Deilke that a successful collateral attack of the convictions would breach the plea agreements; and therefore, it was only an unarticulated expectation that was not agreed to by Deilke. *State v. Deilke,* 2003 WI App 151, ¶ 23, 266 Wis. 2d 274, 667 N.W.2d 867. We granted review, and we reverse.

## II. DISCUSSION

A. Standard of Review

¶ 10. This case requires us to determine whether Deilke's successful collateral attack on his convictions constitutes a material and substantial breach of the plea agreements. While the historical facts will not be set aside unless they are clearly erroneous, whether the particular conduct constitutes a material and substantial breach of a plea agreement is a question of law that we review de novo. *State v. Williams,* 2002 WI 1, ¶ 5, 249 Wis. 2d 492, 637 N.W.2d 733; *State v. Wills,* 193 Wis. 2d 273, 277, 533 N.W.2d 165 (1995). In this case, the historical facts leading up to Deilke's convictions are not at issue; rather, we review, de novo, whether his successful collateral attack constitutes a material and substantial breach of the plea agreements warranting a remedy. And finally, we will not reverse the remedy selected by the circuit court for a material and substantial breach unless the circuit court erroneously exercised its discretion. *State v. Howard,* 2001 WI App 137, ¶ 36, 246 Wis. 2d 475, 630 N.W.2d 244.

B. Plea Agreements, Generally

¶ 11. Plea agreements are "an essential component of the administration of justice." *Santobello v. New*

*York,* 404 U.S. 257, 260 (1971); *see also State ex rel. White v. Gray,* 57 Wis. 2d 17, 21–22, 203 N.W.2d 638 (1973). They can result in the prompt disposition of criminal cases and eliminate the need for full-scale trials, saving the State time, money and other resources. *Santobello,* 404 U.S. at 260–61. They also reduce the amount of time a defendant spends awaiting disposition of charges against him or her, *id.* at 261; can reduce the risk of additional convictions when charges are dismissed; and reduce a defendant's exposure to higher penalties at sentencing after a trial. We require certain procedural protections to safeguard defendants from unfair treatment. *Id.* at 262.[6] Once a plea agreement has been reached and a plea made, a defendant's due process rights require the bargain be fulfilled. *Williams,* 249 Wis. 2d 492, ¶ 37; *State v. Matson,* 2003 WI App 253, ¶ 16, 268 Wis. 2d 725, 674 N.W.2d 51.

¶ 12. A plea agreement is analogous to a contract, though the analogy is not precise.[7] However, we do draw upon contract principles in determining the rights of the parties to a plea agreement and whether there

---

[6] For example, a defendant's plea must be made knowingly and voluntarily, *see Santobello v. New York,* 404 U.S. 257, 261–62 (1971), and the circuit court must follow specific statutory guidelines before accepting the plea. Wis. Stat. § 971.08 (2001–02); *State v. Lange,* 2003 WI App 2, ¶ 18, 259 Wis. 2d 774, 656 N.W.2d 480.

[7] The plea agreement-contract analogy is not precise because plea agreements may implicate fundamental due process rights. *State v. Rivest,* 106 Wis. 2d 406, 413, 316 Wis. 2d 395 (1982); *State v. Scott,* 230 Wis. 2d 643, 655, 602 N.W.2d 296 (Ct. App. 1999).

has been a breach that is material and substantial.[8] *State v. Rivest,* 106 Wis. 2d 406, 413–14, 316 N.W.2d 395 (1982); *State v. Scott,* 230 Wis. 2d 643, 654–55, 602 N.W.2d 296 (Ct. App. 1999); *State v. Toliver,* 187 Wis. 2d 346, 355, 523 N.W.2d 113 (Ct. App. 1994); *State v. Jorgensen,* 137 Wis. 2d 163, 167, 404 N.W.2d 66 (Ct. App. 1987).

## C. Breach of Plea Agreement

¶ 13. Not all conduct that deviates from the precise terms of a plea agreement constitutes a breach that warrants a remedy. *State v. Bangert,* 131 Wis. 2d 246, 290, 389 N.W.2d 12 (1986) (concluding that a technical breach will not warrant a remedy). In order for a court to vacate a plea agreement, the breach must be material and substantial.[9] *Williams,* 249 Wis. 2d 492, ¶ 38; *Bangert,* 131 Wis. 2d at 290; *Rivest,* 106 Wis. 2d at 414.

---

[8] "Material and substantial," though it appears to have two parts, is actually a single concept. In relation to a breach of a plea agreement, the concept makes its first appearance in *Rivest.* 106 Wis. 2d at 414. *Rivest,* however, uses three different variations to describe a breach of a plea agreement that warrants a remedy: "material and substantial," *id.,* "sufficiently material," *id.,* and "substantial default of a material issue," *id.* "Material and substantial" is the phrase that has survived, and that has been used in subsequent cases as the standard, though it is a single concept, and that concept deals with materiality. *See* note 9, *supra.*

[9] The concept of a material breach comes from contract law. *See Rivest,* 106 Wis. 2d at 413. In contract law, a material breach of a contract releases the non-breaching party from performance of the contract. *Management Computer Servs., Inc. v. Hawkins, Ash, Baptie & Co.,* 206 Wis. 2d 158, 183, 557 N.W.2d 67 (1996). A material breach can be one that deprives the non-breaching party of a benefit that party reasonably ex-

The burden is on the party arguing a breach to show, by clear and convincing evidence, that a breach occurred and that the breach is material and substantial. *Bangert,* 131 Wis. 2d at 289; *State v. Rock,* 92 Wis. 2d 554, 559, 285 N.W.2d 739 (1979).

■

¶ 14. A material and substantial breach of a plea agreement is one that violates the terms of the agreement and defeats a benefit for the non-breaching party. *Williams,* 249 Wis. 2d 492, ¶¶ 38, 46–47 (concluding that the prosecutor's failure to relate the sentence agreed upon in a neutral fashion was a material and substantial breach of the agreement); *Matson,* 268 Wis. 2d 725, ¶ 25 (concluding that the investigating officer's letter to the court in which he recommended a sentence greater than that which the prosecutor requested in the plea agreement was a material and substantial breach of the agreement); *State v. Robinson,* 2002 WI 9, ¶ 47, 249 Wis. 2d 553, 638 N.W.2d 564 (concluding that Robinson's successful withdrawal of a no-contest plea to one of the counts of which he was convicted was a material and substantial breach); *Howard,* 246 Wis. 2d 475, ¶¶ 16–17 (concluding that a prosecutor's recommendation of a consecutive, rather than a concurrent, sentence was not merely a technical violation); *State v. Howland,* 2003 WI App 104, ¶ 37, 264 Wis. 2d 279, 663 N.W.2d 340 (concluding that the prosecutor's comments to the presentence investigative report's drafter that

pected. *Id.,* 206 Wis. 2d at 184. *See* Restatement (Second) of Contracts § 241 (1981). However, in contract law, there is no parallel concept of "substantial" breach. Nonetheless, "substantial" has been used in tandem with "material" regarding breaches of plea agreements, and we use it here as well, noting that "material and substantial" is a single concept.

resulted in an amended report recommending a greater sentence was a material and substantial breach of the plea agreement).

D. Deilke's Plea Agreements

1. Material and substantial breach

¶ 15. We must decide whether Deilke's successful collateral attack on his previous convictions for OM-VWI constitutes a material and substantial breach of the plea agreements.[10] In the plea agreements between Deilke and the State, there is no dispute that both parties relinquished rights and received benefits by plea-bargaining. Deilke gave up his constitutional rights to a jury trial, to be proven guilty beyond a reasonable doubt by a unanimous jury, to confront and cross-examine witnesses, and to remain silent. In return, Deilke was convicted of only three charges: an OMVWI in 1993, 1994 and 2000. His pleas eliminated the risk of going to trial on six additional charges: 1993, PAC-2nd; 1994 PAC-3rd, OAR, OMVWI-4th and PAC-4th; 2000, PAC-4th.[11] He also received less-than-maximum fines and penalties. For its

---

[10] The State agrees with Deilke that he had the right to collaterally challenge his previous convictions during a proceeding where the prior convictions were being used for sentence enhancement, based on an alleged invalid waiver of the right to counsel. *See State v. Hahn,* 2000 WI 118, 238 Wis. 2d 889, 618 N.W.2d 528; *Custis v. United States,* 511 U.S. 485 (1994). Both parties also agree that Deilke's 1993, 1994 and 2000 OMVWI convictions were obtained without a valid waiver of counsel.

[11] Pursuant to Wis. Stat. § 346.63(1)(c), the State may proceed on both OMVWI and PAC charges when they arise out of the same incident. However, a person found guilty of both OMVWI and PAC receives a single conviction for purposes of sentencing and for purposes of counting convictions.

part, the State gave up the right to prosecute other viable charges against Deilke and it recommended less-than-maximum fines and penalties.[12] However, the State did not have to prepare for and participate in trials;[13] it obtained fines, jail time, license revocations and the effect of those convictions on penalties for subsequent OMVWI convictions. In assessing the plea bargains, the circuit court concluded:

> Deilke in each incident received the benefit of some bargain with the District Attorney. In most instances the District Attorney, in exchange for a plea to the OWI charges, dismisses any other traffic citations which are part of the file. In other instances, lower guideline penalties are applied as an inducement for the defendant to plead to the charge.

¶ 16. The State asserts that due to Deilke's breach, it did not receive the full benefit of the plea bargains because his successful attack eliminated a portion of the punishment for each conviction—the effect of the convictions on the statutory penalties available for subsequent OMVWI convictions. Deilke makes three arguments to counter the State's argu-

---

[12] The dissent contends that the State did not give up the opportunity to prosecute Deilke on additional charges because the additional "charges are dismissed, not as a benefit of a plea bargain, but by operation of law." Dissent, ¶ 39. The dissent's assertion is incorrect because, absent a plea bargain, Deilke would have been required to defend against both PAC and OMVWI charges at trial. Wis. Stat. § 346.63(1)(c).

[13] The court of appeals focused on the lesser amount of work the State was required to perform in avoiding a trial by a plea bargain. *See State v. Deilke*, 2003 WI App 151, ¶ 16, 266 Wis. 2d 274, 667 N.W.2d 867. However, we note that Deilke, through the plea bargains, also avoided the expense and strain of a trial.

ment and to support the court of appeals decision: (1) he did not move to withdraw his pleas, he moved to invalidate only their effect; (2) during the negotiation for the plea bargains, no one told him that he could not attack the convictions at a later date because the State was relying on the penalty enhancers that are connected with the convictions; and (3) he has served his jail time and paid his fines so no breach of the plea bargains occurred.

¶ 17. In regard to his first argument, Deilke argues to us, as he did in the circuit court, that since he did not move to withdraw his pleas, but merely attacked the convictions due to the lack of a valid waiver of counsel, the convictions were not invalidated; they simply cannot be used for purposes of sentence enhancement. Deilke cites no authority for the novel idea that a conviction obtained through an unrepresented defendant's plea, made without a valid waiver of counsel, can stand, yet its effect cannot.[14] Indeed, in *Burgett v. Texas,* 389 U.S. 109, 114–15 (1967), the United States Supreme Court concluded that a conviction obtained without the assistance or the waiver of counsel is "void." We employed similar reasoning, citing *Burgett,* and came to a similar conclusion in *State v. Hahn,* 2000 WI

[14] The dissent bases its position on this theory as well, and following Deilke's lead, it, too, cites no authority for its legal conclusion. Dissent, ¶ 40. Instead, the dissent cites *Burgett v. Texas,* 389 U.S. 109 (1967), which we have cited in some detail in ¶ 17. However, *Burgett* provides no support for the dissent's theory. In *Burgett,* the United States Supreme Court held that a conviction obtained without assistance or a valid waiver of counsel is "void." *Id.* at 114–15. It said nothing about keeping the conviction in place while removing the effect of the conviction.

118, ¶ 29, 238 Wis. 2d 889, 618 N.W.2d 528, where we stated that, "the offender may seek to reopen a sentence imposed as a persistent repeater . . . if that sentence was based on the *vacated conviction." Id.* (emphasis added). Therefore, in each case where a defendant's constitutional right to counsel was abridged, the conviction was set aside in its entirety. Additionally, once a conviction for OMVWI is entered and not set aside, the legislature determines its effect on punishments for future OMVWI violations, through Wis. Stat. § 346.65(2).[15] Therefore, we conclude that Deilke cannot have it both ways: either the conviction is invalid because of the violation of Deilke's right to counsel or it is valid because he chooses to withdraw his challenge. We conclude that the result of Deilke's successful collateral attack on the convictions was to invalidate the

---

[15] Wisconsin Stat. 346.65(2) states in relevant part:

Any person violating s. 346.63(1):

(b) . . . shall be fined not less than $350 nor more than $1,100 and imprisoned for not less than 5 days nor more than 6 months if the number of convictions . . . counted under s. 343.307(1) within a 10–year period, equals 2 . . . .

(c) . . . shall be fined not less than $600 nor more than $2,000 and imprisoned for not less than 30 days nor more than one year in the county jail if the number of convictions . . . counted under s. 343.307(1), equals 3 . . . .

(d) . . . shall be fined not less than $600 nor more than $2,000 and imprisoned for not less than 60 days nor more than one year in the county jail if the number of convictions . . . counted under s. 343.307(1), equals 4 . . . .

(e) . . . is guilty of a Class H felony and shall be fined not less than $600 and imprisoned for not less than 6 months if the number of convictions . . . counted under s. 343.307(1), equals 5 or more . . . .

convictions. Accordingly, we address the remainder of our discussion to Deilke's two other arguments.

¶ 18. Deilke asserts that none of his plea agreements contained the express condition that the convictions would be used for penalty enhancing purposes or that he could not collaterally challenge those convictions. In the absence of such express provisions, Deilke contends he cannot have breached the plea agreements. He asserts that the court of appeals was correct in concluding that, "[The State's] contended harm arises from an unspoken expectation not evident or explained to Deilke during the plea process. Deilke could not breach a plea agreement by *failing to comply with an unarticulated requirement.*" *Deilke*, 266 Wis. 2d 274, ¶ 23. The State argues that the punishment to which Deilke was subject as part of the plea agreements included the statutory effect of repetitive OMVWI convictions set out in Wis. Stat. § 346.65(2), and by removing that effect, he materially and substantially breached the agreement. Without the penalty-enhancing feature, the State claims the convictions are virtually useless in trying to keep impaired drivers off the road.[16]

¶ 19. Additionally, in decisions that have reviewed the contention that a plea agreement has been breached, the conduct that was held to be a breach never was explicitly mentioned as an act a party to the agreement was constrained from taking. *See, e.g., Matson*, 268 Wis. 2d 725 (concluding that an investigating officer's letter to the court recommending that the

---

[16] The prosecutor noted, "[I]t doesn't do me much good to get a conviction in this [b]ranch if I can't then use it for penalty enhancement purposes in the future. I mean[,] what good is a conviction on his record if it doesn't mean anything?"

sentence be longer than was agreed to in the plea bargain was a material and substantial breach of the plea bargain); *Williams,* 249 Wis. 2d 492 (concluding that a prosecutor's "less than neutral" presentation of the plea bargain breached the agreement). Accordingly, we conclude that the lack of a specific instruction to Deilke in regard to a subsequent attack of the convictions, is not dispositive of any issue before us.[17]

¶ 20. Furthermore, we are not persuaded by Deilke's argument that because he served jail time and paid fines, no breach of the plea agreement occurred. We agree with the State that a part of Deilke's punishment was the effect of the statutory scheme regarding drunken driving penalties under Wis. Stat. § 346.65, which envisions progressive punishment as a central component of convictions. *See State v. Banks,* 105 Wis.

---

[17] The dissent characterizes the statutory consequences of repetitive OMVWI convictions as an "implicit" term of the plea agreements, and accuses the majority of "attempting to stretch the law" because the dissent maintains that no case cited by the majority relies on a breach of an "implicit term of a plea agreement." Dissent, ¶ 44. In arguing that there can be no breach of the plea agreement if the breached provision is "implicit," dissent ¶¶ 44, 47, 53, the dissent sets up a straw-man so that it can then knock it down. The word "implicit" is not used in the majority opinion. Indeed, if one were forced to choose a label for the statutory penalties that increase with each OMVWI conviction, it surely would be "explicit," as the mandatory consequences of repetitive OMVWI violations are clearly stated in the statutes. Furthermore, Deilke had to know that these statutory provisions were part of his pleas because the charge at issue here was his 6th OMVWI in ten years, during which time he was subjected to those increasing penalties. Additionally, breaches of provisions that were not explicitly stated in plea agreements have been held to be material and substantial breaches, as we discussed in ¶ 14.

2d 32, 49, 313 N.W.2d 67 (1981) (noting that removing drunk drivers from the highways is the "underlying premise of the criminal penalties" in § 346.65, and that "the purpose of general repeater statutes is to increase the punishment of persons who fail to learn to respect the law after suffering the initial penalties and embarrassment of conviction").

¶ 21. In addition, the prosecutor is without the authority or power to bargain away the penalty-enhancing character of an OMVWI or PAC conviction. *See* Wis. Stat. § 343.307(1) (stating, in relevant part, "The court *shall* count the following . . . to determine the penalty under s. 346.65(2): (a) Convictions for violations under s. 346.63(1) [*i.e.,* OMVWI or PAC convictions]") (emphasis added). *See also Banks,* 105 Wis. 2d at 39 (stating that the use of the word "shall" in the penalty provisions of Wis. Stat. § 346.65(2) evidences a legislative intent that "all the penalties for repeated offenses . . . be mandatory rather than discretionary . . . ."). Without a conviction for a violation of Wis. Stat. § 346.63(1) that allows the State to use the penalty-enhancing value of that conviction in the sentencing under § 346.65(2), the grounds on which the State negotiated the plea agreement substantially changed. *See Robinson,* 249 Wis. 2d 553, ¶ 47.

¶ 22. We note that analyzing the parties' contentions under contract principles also causes us to conclude that Deilke materially and substantially breached the plea agreement.[18] For example, in reviewing the effect of a successful attack on a conviction that re-

---

[18] The dissent takes issue with the application of contract principles to Deilke's breach of the plea agreement. Dissent, ¶ 57. However, when a defendant is alleged to have breached a

sulted from a plea bargain, we concluded a breach occurred. *Robinson*, 249 Wis. 2d 553, ¶ 47. Robinson and the State entered into a plea agreement whereby the State dropped a repeater allegation and reduced an aggravated battery charge to a reckless endangerment charge, while retaining a second reckless endangerment charge. The State's amendment reduced Robinson's possible prison time from twenty-seven years to ten years. Robinson pled to both counts of reckless endangerment. He was sentenced to five years on each count, to be served consecutively. *Id.*, ¶¶ 6–8. Robinson then filed a postconviction motion arguing that the two counts of recklessly endangering safety were multiplicitous and violated the double jeopardy clauses of the state and federal constitutions. *Id.*, ¶ 9. On appeal, the State did not challenge this contention, *id.*, ¶ 12, but it argued the effect of Robinson's motion, which would reduce Robinson's overall sentence from ten years to five years (half of what the State believed it had bargained to receive), amounted to a repudiation of the plea agreement. *See id.*, ¶¶ 9, 18. We agreed that the successful withdrawing of Robinson's plea to one of the counts of reckless endangerment constituted a repudiation of the plea agreement. *Id.*, ¶ 47. Accordingly, we conclude that Deilke's collateral attack here also prevented the State from receiving all it bargained for when it dismissed multiple charges in exchange for one OMVWI conviction which has, at its core, repeater consequences designed to remove drunk drivers from Wisconsin highways.

¶ 23. We also note that decisions that have reviewed alleged breaches of plea agreements have con-

plea agreement, contract principles guide the analysis and the remedy. *See State v. Robinson*, 2002 WI 9, ¶ 50, 249 Wis. 2d 553, 638 N.W.2d 564.

cluded that good faith is implied in plea agreements. *Scott*, 230 Wis. 2d at 656 (concluding that the State was "obliged to act in good faith and adhere to the bargain it had struck with Scott"); *see also State v. Wills*, 187 Wis. 2d 529, 537, 523 N.W.2d 569 (Ct. App. 1994).[19] We have also concluded that a party to a plea agreement cannot do an "end run" around the plea agreement and in so doing accomplish by indirect means what could not be done by direct means. *Williams*, 249 Wis. 2d 492, ¶ 42.

¶ 24. Here, Deilke's successful collateral challenge of the convictions entered on the basis of his guilty pleas accomplished by indirect means what he could not have done directly. He retains all of the benefits of the plea agreement (*e.g.*, being subject to fewer charges, less-than-maximum fines and jail time) *and* attempts to place himself in a better position than he would have been if he had entered the same agreements with advice of counsel. That is, the previous convictions he successfully challenged cannot be used as penalty enhancers in subsequent OMVWI/PAC proceedings. The State, on the other hand, retains only some of the benefits of the original agreement (*e.g.*, not having to take the case to trial), but it is left in a far worse position. As the circuit court said at the hearing to reinstate the charges, "So the practical effect is what, despite this rather horrendous record that Mr. Deilke has achieved that now he gets credit to be an OWI first?" This is inconsistent with concepts of fairness that run to both the State and Deilke. As we explained in

---

[19] This court was equally divided on whether the State breached the plea agreement at issue in *State v. Wills*, therefore, the decision of the court of appeals on that issue—and the proposition that the parties to a plea agreement are required to act in "good faith"—was affirmed. *State v. Wills*, 193 Wis. 2d 273, 275, 533 N.W.2d 165 (1995).

*Rivest,* "To allow a defendant to claim the benefit of an agreement where he, himself, is in default, offends fundamental concepts of honesty, fair play and justice." *Rivest,* 106 Wis. 2d at 414. Accordingly, we conclude that Deilke's conduct materially and substantially breached the plea agreements.

## 2. Remedy for breach

¶ 25. Having concluded that Deilke's successful collateral challenge to his previous convictions was a material and substantial breach of the plea agreements, we turn now to whether the remedy of rescission that was applied here is warranted. Not every breach of a plea agreement necessarily gives rise to a per se right to a remedy; however, a material and substantial breach is a manifest injustice that requires vacating the plea. *Bangert,* 131 Wis. 2d at 289. The appropriate remedy for a material and substantial breach of a plea agreement depends on the totality of the circumstances. *Robinson,* 249 Wis. 2d 553, ¶ 48. "A court must examine all of the circumstances of a case to determine an appropriate remedy for that case, considering both the defendant's and State's interests." *Id.* One remedy is to vacate the negotiated plea agreement and reinstate the original charges against the defendant. *Id.* In *Robinson,* we concluded that given the circumstances in that case, the parties should be restored to the same positions they held before the defective plea agreement was entered. *Id.* at ¶ 49. *See also State v. Briggs,* 218 Wis. 2d 61, 73–74, 579 N.W.2d 783 (Ct. App. 1998) (reinstating the parties to the positions they had before they negotiated a plea agreement based on an inaccurate view of the law).

¶ 26. In this case, the State requested reinstatement of the PAC charges against Deilke.[20] The circuit court granted the motion and Deilke, with advice of counsel, pled to the PAC counts. The State did not request any additional jail time, fines or term of license revocation for these convictions, other than that which had been imposed at the time of the OMVWI convictions. However, the PAC convictions then served as the basis for the OMVWI-5th and PAC-5th charges that occurred in 2001. We conclude that the circuit court appropriately exercised its discretion when it rescinded the plea agreements and returned the parties to the positions they occupied at the time they believed they had entered into valid plea agreements.

3. Statute of limitations

¶ 27. Deilke argues that the statute of limitations bars the reinstatement of the 1993 PAC charge because the three-year time limitation for prosecution of misdemeanors has run. *See* Wis. Stat. § 939.74(1).[21] The circuit court[22] rejected Deilke's statute of limitations defense and added that even if it were a defense, the State would be able to block its use through the discovery rule announced in *Hansen v. A.H. Robins Co.,*

---

[20] It did not request reinstatement of the fourth PAC count, the OAR counts or the OMVWI that also were dismissed.

[21] Wisconsin Stat. § 939.74(1) provides in relevant part: "Except as provided in subs. (2) and (2d) and s. 946.88(1), prosecution . . . must be commenced . . . for a misdemeanor . . . within 3 years after commission thereof. Within the meaning of this section, a prosecution has commenced when a warrant or summons is issued, an indictment is found, or an information is filed."

[22] The court of appeals did not reach this issue.

617

113 Wis. 2d 550, 560, 335 N.W.2d 578 (1983) (holding that a personal injury action accrues, for statute of limitations purposes, when the plaintiff discovers, or reasonably should discover, the injury). We agree with the circuit court that Deilke does not have a statute of limitations defense. However, we reach our conclusion on a different basis. *See State v. Chrysler Outboard Corp.*, 219 Wis. 2d 130, 148–49, 580 N.W.2d 203 (1998) (refusing to extend the discovery rule to quasi-criminal environmental enforcement cases and limiting the discovery rule to tort cases).

¶ 28. The primary purpose of the statute of limitations is to protect the accused from criminal consequences for remote past actions. *State v. Jennings,* 2003 WI 10, ¶ 15, 259 Wis. 2d 523, 657 N.W.2d 393 (citations omitted). However, we have held that prosecution for the act in question tolls the statute of limitations that otherwise would apply. *State v. Pohlhammer,* 78 Wis. 2d 516, 522, 254 N.W.2d 478 (1977).

¶ 29. In *Pohlhammer,* we addressed the consequence to the parties of charges that were withdrawn when a plea bargain resulted in the filing of an amended information to which Pohlhammer pled. On postconviction motion, Pohlhammer argued that the act described in the amended information (making a false representation) was different from the act described in the original information (intentionally damaging a building by means of fire). We agreed, concluding that not all charges that arise out of the same course of conduct comprise the same acts. *Id.* at 522–23. Therefore, because the amended information was filed more than six years after the complained of act, Pohlhammer argued he had an absolute defense to the charge and his conviction should be vacated. *Id.* at

522–23. We agreed that the conviction was properly vacated. *Id.* at 524. However, because the amended information, which was filed based on Pohlhammer's agreement to plead guilty to the one charge it contained, formed the basis for the plea bargain that Pohlhammer breached through his successful postconviction motion, we returned the parties to "the same posture" they occupied prior to his plea. *Id.* Accordingly, we reinstated the original information that contained three counts of arson with intent to defraud an insurer, as party to the crime, and permitted further proceedings on those charges. *Id.* at 524–25.

■

¶ 30. We conclude that *Pohlhammer* provides ample support for the circuit court's conclusion that Deilke has no statute of limitations defense to the PAC charges he pled to after his original convictions were set aside. As in *Pohlhammer*, PAC was charged and initial appearances were made before the statute of limitations was implicated. As in *Pohlhammer*, the PAC charges were not proceeded upon because of plea bargains in which Deilke pled to OMVWI charges, the convictions for which he later successfully overturned. As in *Pohlhammer*, Deilke's pleas induced the State to refrain from prosecuting the PAC charges when they were originally filed. Accordingly, we conclude that the circuit court was correct in rescinding the plea agreements so that the parties were in the same posture as they had prior to Deilke's pleas, when the statute of limitations was not implicated.[23]

---

[23] Other states that have considered a statute of limitations defense after a plea agreement has been abrogated and the charges dismissed earlier have been reinstated have come to the same conclusion. *See, e.g., Geiger v. State,* 532 So.2d 1298, 1301

### III. CONCLUSION

¶ 31. We conclude that the circuit court correctly held that Deilke's successful collateral challenge to his convictions constituted a material and substantial breach of the plea agreements on which the convictions were based. Further, because we agree with the circuit court that the appropriate remedy for the breach was to vacate the plea agreements and reinstate those original charges for which the State requested reinstatement and to accept Deilke's subsequent guilty pleas, we reverse the decision of the court of appeals.

*By the Court.*—The decision of the court of appeals is reversed.

¶ 32. DIANE S. SYKES, J., did not participate.

¶ 33. ANN WALSH BRADLEY, J. (*dissenting*). I, too, am concerned about the problem of drunk drivers on our highways and realize that the safety of all citizens is jeopardized by their presence. Nevertheless, I cannot join the majority opinion because in reaching its conclusion the majority (1) inflates the facts; (2) stretches the law; and (3) fails to consider the broad consequences of its decision.

(Fla. Dist. Ct. App. 1988) (finding statute of limitations tolled during postconviction motion because the charges were merely reinstated and the defendant had implied notice that abrogation of plea agreement would result in reinstatement of the charges); *State v. White,* 838 S.W.2d 140, 142 (Mo. Ct. App. 1992) (holding that in the interest of fairness, the statute of limitations tolls during a defendant's postconviction motion); *State v. Neely,* 1 S.W.3d 679, 683 (Tenn. Crim. App. 1999) (holding that the statute of limitations tolls during a postconviction motion because, otherwise, a defendant could attack the reinstated conviction while the state could not rescind from its side of the bargain).

¶ 34. The majority cannot cite a single case from any jurisdiction that has ruled that a defendant who has served his sentence breaches his plea agreement by collaterally attacking the use of a prior conviction for penalty enhancement. Because I agree with the unanimous court of appeals' decision here, which concluded that Robert Deilke did not breach the plea agreements in the 1993 and 2000 cases by collaterally attacking the results of those convictions, I respectfully dissent.

¶ 35. In 1993, 1994, and 2000, Deilke was convicted on the basis of pleas obtained without benefit of counsel. He successfully collaterally attacked those convictions, and the State concedes that the convictions were obtained in violation of Deilke's constitutional right to counsel. Now, the majority concludes that by asserting his constitutional rights, Deilke is attempting to evade the consequences of his bargain with the State and in so doing has materially and substantially breached that bargain.

## A. Inflation of Facts

¶ 36. The essence of the majority's analysis lies in the application of contract principles to plea bargains. Majority op., ¶ 12. After doing a benefit of the bargain analysis, it concludes that it would be unfair to allow Deilke to retain "all of the benefits of the plea agreement" and not be subjected to penalty enhancement of the prior convictions. *Id.*, ¶ 24.

¶ 37. Herein lies the majority's problem. In weighing "all of the benefits," it fails to note that most of the dismissed charges that it is weighing have nothing to do with this case. As the parties made abundantly clear in their briefs and at oral argument, we are dealing with only two prior convictions, not

three. The convictions that are the focus of our inquiry
are the 1993 and 2000 convictions—not the 1994 con-
viction. The majority acknowledges that in a footnote,[1]
but nevertheless uses the charges in the 1994 case to
inflate the benefits received by Deilke.

¶ 38. The majority weighs an asserted benefit to
Deilke of not facing six additional charges because they
were dismissed as part of the plea agreements. *Id.*,
¶ 15. Yet, four of the six dismissed charges are in the
1994 case and are not involved here.

¶ 39. Of the two remaining charges that were
dismissed, the 1993 PAC charge and the 2000 PAC
charge, there is no benefit whatsoever that inures to
Deilke. Those two charges are dismissed, not as a
benefit of a plea bargain, but by operation of law.
Although Wis. Stat. § 346.63(1)(c) provides that the
State may prosecute both OMVWI and PAC, one of the
charges must be dismissed because only a single con-
viction can be entered.[2]

---

[1] The majority opinion states:

The State's motion regarding Deilke's 1993 and 2000 cases was
granted by the circuit court for Eau Claire County, Judge Eric J.
Wahl, presiding. The State's motion regarding Deilke's 1994 con-
viction was denied by a different judge in a different circuit court
branch and is not part of this appeal.

Majority op., ¶ 8, n. 4.

[2] Wisconsin Stat. § 346.63(1)(c) provides:

A person may be charged with and a prosecutor may proceed upon
a complaint based upon a violation of any combination of par. (a)
or (b) or both for acts arising out of the same incident or
occurrence. If the person is charged with violating both par. (a) and
(b), the offenses shall be joined. If the person is found guilty of both
pars. (a) and (b) for acts arising out of the same incident or
occurrence, there shall be a single conviction for purposes of
sentencing and for purposes of counting convictions under ss.

¶ 40. Thus, there is no benefit that inures to Deilke for dismissed charges. Rather, under the facts of this case, quite the opposite is true. Because Deilke never attacked his 1993 and 2000 OMVWI convictions, but only contested the consequences of those convictions for purposes of penalty enhancement, those OMVWI convictions still remain of record. Rather than receiving the benefit of any dismissed charges, Deilke now has the burden of both OMVWI and PAC convictions of record for the 1993 and 2000 offenses. By anyone's math, because of the dual convictions of record, the numbers reflect a net loss to Deilke, not an unfair benefit.

## B. Stretching the Law

¶ 41. The majority cannot cite a single case from any jurisdiction that holds as the majority does here: that a defendant who has served his sentence breaches his plea agreement by collaterally attacking the use of a prior conviction for penalty enhancement. On the contrary, many cases suggest that the majority's approach is constitutionally suspect.

¶ 42. In *Burgett v. Texas,* the Supreme Court announced that if a defendant demonstrates that an earlier conviction was obtained in violation of his right to counsel, it may not be used as a penalty enhancer in a subsequent proceeding. 389 U.S. 109, 115 (1967). There, the court recognized that use of the uncounseled prior conviction compounds the harm done to the defendant by deprivation of the right to counsel. *Id. See also Custis v. U.S.,* 511 U.S. 485 (1994). This court analyzed *Custis* in *State v. Hahn* and reaffirmed that a

343.30(1q) and 343.305. Paragraphs (a) and (b) each require proof of a fact for conviction which the other does not require.

defendant has a federal constitutional right to challenge the use of a prior conviction in an enhanced sentencing proceeding when the defendant alleges that his constitutional right to counsel was violated in the earlier proceeding. 2000 WI 118, ¶ 17, 238 Wis. 2d 889, 618 N.W.2d 528.

¶ 43. By holding that a collateral attack of a conviction as a penalty enhancer in an entirely separate proceeding constitutes a breach of the earlier plea agreement, the majority is imposing a rather stiff tax on the exercise of the constitutional right to challenge a conviction obtained in violation of the right to counsel. It is not clear how, if at all, the majority can reconcile its holding with *Burgett, Custis,* and *Hahn.*

¶ 44. The majority concludes that the collateral attack violated an implicit term of the plea agreement. It offers a pair of cases as authority for the premise that a plea agreement contains implicit terms the violation of which constitute breach.[3] Once again, the majority is attempting to stretch the law to accommodate its novel contention. Neither of the cases cited by the majority involved an implicit term of a plea agreement.

---

[3] Actually, the majority asserts that "in decisions that have reviewed the contention that a plea agreement has been breached, the conduct that was held to be a breach never was explicitly mentioned as an act a party to the agreement was constrained from taking." Majority op., ¶ 19.

The majority nowhere explains what term of the plea agreement Deilke violated. The reader is left to guess that the majority concluded that Deilke violated an implicit term not to collaterally attack the convictions in future proceedings. Whatever the term might be, it must be an implicit term supplied by the majority, as the express terms of the plea agreement are silent with respect to the issue in this case.

¶ 45. In *State v. Matson,* a detective wrote to the judge requesting that the judge impose the maximum allowable sentence. 2003 WI App 253, 268 Wis. 2d 725, 674 N.W.2d 51. The court of appeals concluded that the letter controverted the sentencing recommendation and therefore constituted a breach of the plea agreement, noting that "once an accused agrees to plead guilty in reliance upon a prosecutor's promise to perform a future act, the accused's due process rights demand fulfillment of the bargain." *Id.,* ¶ 16.

¶ 46. In *State v. Williams,* we found that the prosecutor presented the agreed-upon sentencing recommendation in a less-than-neutral way. 2002 WI 1, 249 Wis. 2d 492, 637 N.W.2d 733. Citing constitutional concerns identical to those mentioned in *Matson,* we concluded that this effectively breached the plea agreement. *Id.,* ¶ 59.

¶ 47. Contrary to the majority's contention, in both *Matson* and *Williams* the court found that the State violated an explicit term of the plea agreement, i.e. to recommend the agreed upon sentence. Furthermore, the reasoning underlying these cases was specific to the defendant's due process rights and not grounded in contract principles. Consequently, they do not address whether a defendant who has performed as specified in the explicit terms of his plea agreement may be found to have breached an implied term, nor do they speak to whether such a breach, if it could take place, might be material and substantial.

¶ 48. The majority also invokes a pair of cases in which the defendants were found to have materially and substantially breached their plea agreements: *State v. Robinson,* 2002 WI 9, 249 Wis. 2d 553, 638 N.W.2d 564, and *State v. Rivest,* 106 Wis. 2d 406, 316 N.W.2d 395 (1982). In *Robinson,* the defendant had

not yet started to serve his sentence. Pursuant to an agreement, the State filed an amended information and the defendant pled guilty to two counts of reckless endangerment, with a resulting exposure of 10 years' imprisonment. Subsequently he sought to have one count vacated, claiming that it was multiplicitious. Thus, he attempted to cut his exposure to only five years' imprisonment—half of what was contemplated in the plea agreement.

¶ 49. The *Robinson* court determined that when a defendant successfully challenges his conviction on one count of a two-count information and thus reduces his exposure to half of what was contemplated in the plea agreement, the defendant has breached a term of the agreement. 249 Wis. 2d 553, ¶ 57. Employing the contract principle of detrimental reliance, the court concluded that the remedy is to reverse the convictions and sentences, vacate the plea agreement, and reinstate the original information so that the parties are restored to their positions prior to the negotiated plea agreement. *Id.,* ¶ 55.

¶ 50. In this case the future use of Deilke's convictions for penalty enhancement purposes was never made a part of the agreement. Unlike in *Robinson,* where the defendant was challenging one of two convictions in the same information before the court, here the convictions which the State seeks to vacate are closed cases, dating back to eight years prior to the case currently pending before the court.

¶ 51. Moreover, Deilke served all of his time, paid all of his fines, attended all required classes, endured his license revocations, and even forfeited his vehicle. Unlike in *Robinson,* where the defendant had not yet started to serve his sentence, the defendant cannot be restored to his position prior to the negotiated plea

626

agreement. How can you undo the forfeiture of his car and the period of time that he was without its use?

¶ 52. In *State v. Rivest,* another case relied upon by the majority, the defendant agreed to testify against an accomplice as part of his plea agreement. It was later determined that he had testified falsely. The *Rivest* court gave deference to the factual findings of the circuit court which expressly held that one of the conditions of the plea agreement was that Rivest would give truthful testimony. In reviewing the circuit court's findings, this court determined that the testimony of both Rivest's attorney and the prosecutor "demonstrates that it was implicit in the plea agreement that Rivest's testimony was to be truthful . . . ." 106 Wis. 2d at 416.

¶ 53. The majority cites *Rivest* for the premise that a defendant who defaults on an implied term of a plea agreement cannot reap its benefit. I do not dispute that premise. I disagree, however, with the application of the *Rivest* premise to this case. *Rivest* can be distinguished in significant ways.

¶ 54. First and foremost, it is important to note that both Rivest's defense attorney and the prosecutor agreed that such an implicit condition existed. Here, the parties do not agree. Second, the court determined that by violating a fundamental tenet of the American system of jurisprudence—truthful testimony—the defendant had defaulted on the plea agreement. Exercising a collateral challenge to sentence enhancement is not akin to violating a fundamental tenet of our American system of jurisprudence. Here, Deilke did not default by exercising his constitutional rights. Rather, he had already served his sentences and otherwise performed the specified terms of his plea agreement.

¶ 55. The majority is also stretching the precedent in its analysis of the duty of good faith implied in plea agreements. In *State v. Wills,* 187 Wis. 2d 529, 523 N.W.2d 569 (Ct. App. 1994), and *State v. Scott,* 230 Wis. 2d 643, 602 N.W.2d 296 (Ct. App. 1999), the court of appeals ruled not on the basis of the implied duty of good faith but rather on the same due process grounds that controlled our decisions in *Williams* and *Matson.*

¶ 56. In sum, the majority is stretching the law and has absolutely no authority to support its novel contention that a defendant who has served his sentence breaches a plea agreement by collaterally attacking the use of a prior conviction for penalty enhancement.

## C. The Consequences

¶ 57. Although the majority pays lip service in a footnote to the limitations of applying contract principles to plea agreements, it fails to acknowledge the extent of those limitations. Majority op., ¶ 12, n. 7, ¶ 22, n. 18.[4] Likewise, the majority fails to acknowledge

---

[4] As stated in *Rivest,* "[w]hile analogies to contract law are important to the determination of questions regarding the effects of a plea bargain, such analogies are not solely determinative of the question as fundamental due process rights are implicated by the plea agreement." *State v. Rivest,* 106 Wis. 2d 406, 413, 316 N.W.2d 395 (1982). We further explained in *Robinson:* "The constitutional concerns undergirding a defendant's 'contract rights' in a plea agreement demand broader and more vigorous protection than those accorded private contractual commitments." *State v. Robinson,* 2002 WI 9, ¶ 50, n. 24, 249 Wis. 2d 553, 638 N.W.2d 264 (quoting *State v. Scott,* 230 Wis. 2d 643, 654–55, 602 N.W.2d 296 (Ct. App. 1999)). "[A] criminal defendant's rights are grounded in more than contract; thus, contract principles, while useful, do not com-

the consequences of having courts, months or years later, reading implied terms into plea agreements. To give such unbridled license undermines the finality of convictions.

¶ 58. The State claims that the benefit it bargained for in the original plea negotiations was the ability to establish the earlier convictions for use in penalty enhancement if there were any subsequent convictions. Yet, the State concedes that it never discussed this term with Deilke during the plea negotiations. It never informed him that it was seeking the specific benefit of using his convictions for later penalty enhancement. How can there be a meeting of the minds between the parties as to this unarticulated condition?

¶ 59. Additionally, I am concerned about the breadth of the majority's holding. Its application of contract principles is not limited to OWI penalty enhancement cases. This may become the motion du jour, brought by both the State and by defendants, trying to open up prior convictions because there was not a meeting of the minds on an unstated term of a plea agreement. Where is the stopping point?

¶ 60. Here, the majority advances that this court should read into the plea bargain what it views as an implicit term, regardless if there was ever any meeting of the minds as to the term. Yet, to read such a term into plea agreements would effectively create an implicit waiver of the right to counsel in all plea agreements, and to do so would chill the exercise of a defendant's constitutional rights.

---

pletely define the obligations of the parties. A myriad of collateral considerations . . . are implicated in plea agreements. In light of such implications, application of the rules of commercial contract law may require 'tempering' the rules." *Scott*, 230 Wis. 2d at 655, n. 8 (citations omitted).

¶ 61. It is unnecessary to introduce this new layer of complexity and uncertainty to the law. A simpler remedy would place the onus for obtaining the defendant's waiver of counsel on the State, at the peril of their ability to use convictions for later penalty enhancement. Like the court of appeals, I conclude that Deilke could not have materially and substantially breached the plea agreement based on this unarticulated condition. Accordingly, I respectfully dissent.

¶ 62. I am authorized to state that Chief Justice SHIRLEY S. ABRAHAMSON joins this opinion.